## King *versus* Baker.

Where the board of property, upon a *caveat*, decided in favour of one of the parties, and the other, within six months, brought ejectment for the land, and afterwards became *nonsuit* in such action, this settled the title conclusively in favour of the party who had the decision of the board of property.

In an action of trespass *quare clausum fregit*, by the person in whom the title became thus vested, against the unsuccessful party, for an injury committed upon the land, after the decision of the board of property, evidence that the *locus in quo* was within the lines of on old improvement, of which the defendant was at the time of the trespass in actual possession, was inadmissible.

From the time that a *caveat* is entered until the right is determined in ejectment, the right of the parties to sue, for injuries committed upon the land, is suspended.

During the time the right to sue in trespass is so suspended, the statute of limitations will not run against the owner, nor operate as a bar against a recovery for such injuries, although the trespass complained of was committed more than six years before suit brought.

ERROR to the Common Pleas of *Indiana county.*

[King *v.* Baker.]

This was an action of trespass *quare clausum fregit*, and for digging and carrying away ore, &c., brought by plaintiff, Elias Baker, against David Stewart and others, on the 13th day of July, 1854. The plaintiff claimed the *locus in quo* by virtue of a warrant granted to William D. McKiernan, on the 6th day of August, 1844, on application dated 3d of August, 1844, and survey made thereon on the 10th of August and 12th and 13th of September, 1844, of 59 acres and 137 perches. McKiernan conveyed to the plaintiff, Elias Baker, by deed dated 5th December, 1846; consideration $1. David Stewart, one of the defendants, at the time the deputy surveyor was executing the McKiernan warrant, entered a *caveat* against the acceptance of the survey on this warrant to McKiernan. This *caveat* was determined by the board of property on the 2d day of March, 1846, in favour of the plaintiff, Elias Baker. David Stewart, within less than six months after this decision of the board of property, brought an action of ejectment for the land embraced in this survey on the McKiernan warrant, in the Common Pleas of Indiana county. This action of ejectment was pending in said court until the 26th of June, 1854, when D. Stewart became nonsuit. The plaintiff in this suit, Elias Baker, had instituted a former action of trespass, *quare clausum fregit*, for digging and carrying away ore, &c., No. 2, September Term, 1847, against the present defendants, being the same injuries complained of in this suit. This former action of trespass, &c., was pending until 25th of June, 1854, when the plaintiff therein, Elias Baker, became nonsuit. Elias Baker then, on the 13th July, 1854, commenced the present suit, to which the defendants pleaded not guilty, and the statute of limitations.

On the trial, in the court below, the defendants made the following offer of testimony :—

That an improvement was made near the place where the alleged trespass was committed, by Thomas Bracken and Thomas C. Wakefield, before the year 1822; that they had a survey of their claim made by Meek Kelly, Esq., on the 8th of November, 1822, embracing the land on which this trespass was alleged to have been committed; that the lines were run and well marked on the ground; that said improvement was continued and kept up until the present time; that the said Bracken and Wakefield sold and conveyed the land embraced in their said survey to Samuel Misner, who sold to David Stewart about the 1st day of August, 1844, before the date of the warrant to William D. McKiernan, under which the plaintiff claims, and that David Stewart and the defendants were in the actual possession of the land on which said trespass is alleged to have been committed, claiming title under said improvement at the time it was committed.

The plaintiff's counsel objected to its admission, and the court

[King *v.* Baker.]

sustained the objection, and at the instance of defendants' counsel sealed a bill of exceptions.

The defendants requested the court to instruct the jury,—

"That the plaintiff cannot recover for any injuries done to his lands by the defendants, more than six years before the impetration of the writ in this cause, inasmuch as the statute of limitations is a bar to a recovery over that time."

The court below (BUFFINGTON, P. J.) instructed the jury that the title to the land had become conclusively vested in the plaintiff by the decision of the board of property, and the determination of the ejectment in 1854. That during the pendency of the ejectment brought within six months after the decision of the board of property, the right of the plaintiff to sue for trespasses committed upon the land was suspended, and that the statute would not run against the plaintiff during that period.

The jury found a verdict in favour of the plaintiff for $1506.75, and judgment was entered thereon.

The defendants took this writ, and assigned here that the court below erred in rejecting the testimony offered by the defendants, and in refusing to instruct the jury that the statute was a bar to all claim for damages accruing from alleged trespasses committed more than six years before suit brought.

*Cowan* and *Banks*, for plaintiffs in error.—The object, it will be readily perceived, of offering the testimony rejected by the court, was to show that the plaintiff was not in possession, and could not therefore maintain trespass *quare clausum fregit*. If the defendants were in the *actual* possession, the plaintiff must resort to his action of ejectment. Even if the evidence showed that the plaintiff had the better title, that did not give him the possession.

In 1 *Chitty's Pleadings* 175, it is said, "The gist of this action is the injury to the possession, and unless at the time the injury was committed, the plaintiff was in the actual possession, trespass cannot be supported." In 6 *Bac. Ab.* 166, "Only the person who has the possession in fact of real property to which an injury has been done, can maintain an action of trespass *quare clausum fregit*." In Greber *v.* Kleckner, 2 *Barr* 291, it is ruled "that the action of trespass *quare clausum fregit* is founded on the possession of the land, and not upon the right of property in it; hence the owner can in no case maintain an action of trespass for an injury committed upon it whilst it is in the possession of another." In Addleman *v.* Way, 4 *Yeates* 218, "Actual possession is necessary to maintain trespass *quare clausum fregit*." So also in Campbell *v.* Arnold, 1 *John. Rep.* 511. In Caldwell *v.* Walters, 10 *Harris* 38, "Possession of the *locus in quo* of a trespass is the test of the right to sue for it."

[King v. Baker.]

2. The second error is to the charge of the court, that the plaintiff was entitled to recover for all injuries from the entry of the *caveat* until the final disposition of the ejectment, covering a period of ten years. The defendants claim that they were protected by the statute of limitations, as to all trespasses committed more than six years before suit brought. The court seemed to think there were peculiar circumstances taking this case out of the rule, and rely on the *dictum* in the case of Shoenberger v. Baker, 10 *Harris* 398. The question was not then before the court, nor does it appear that it occurred to the learned judge that a period of ten years would elapse pending that dispute. If the doctrine be correct, the patentee's title would be better, and his rights extended by the entry of the *caveat*. That the statute may be interposed in this action is shown by the authorities: Hare v. Fury, 3 *Yeates* 14; Huston v. Wickersham, 2 *W. & S.* 314; 2 *Steph. N. P.* 1493; Morgan v. Varech, 8 *Wend.* 587. This last case decides that the action will not lie until after a recovery in ejectment, and that if the injury was done more than six years before suit brought, and the defendant pleads the statute, it must prevail though the injury was done after the commencement of the ejectment, and the defendant prevented judgment in the ejectment by an injunction from chancery.

*Foster* and *Stewart,* for defendant in error.—The defendant, Stewart, owned the improvement, and had that in possession, but the *locus in quo* was not within the improvement; he excluded it in his survey, on his warrant taken out subsequent to the McKiernan warrant, and the survey on that calls for the improvement as adjoining that claimed by him under the warrant and survey. Occupying the improvement, and going on the adjoining lands to commit a trespass will not give him possession, although the lines of the improvement, in 1822, embraced it. The decision of the board of property on that subject is conclusive. The offer was not to prove a possession unconnected with, and independent of, that improvement. It was not an actual possession of the *locus in quo*, but a constructive one, that the defendant sought to establish by the introduction of the proffered testimony. But suppose it to have been in the actual possession of Stewart, at the time the decision of the board of property was given against him, the evidence would still be inadmissible. If, immediately after the decision against him on the *caveat*, he would institute an ejectment and then go upon the land, cut timber, erect buildings, &c., the right of the owner to maintain trespass would be unquestionable, unless all his remedies are suspended pending the ejectment. That this is the case is clearly shown by Shoenberger v. Baker, 10 *Harris* 398. The Act of Assembly provides, that he in whose favour the decision of the board of property is made, shall be deemed to be

[King *v.* Baker.]

in possession, to all intents and purposes of trying the title. The defeated party can alone bring the ejectment within six months; the other within that period cannot bring an action, even though in actual possession. If he could not after it maintain an action for the injury, it would be a great hardship.

On the second error, it is clear from the statute of limitations itself, that it only commences to run from the time the action accrues. The case of Shoenberger *v.* Baker, 10 *Harris* 398, held that the action of trespass was suspended pending the ejectment. The suspension of the remedy by act of the law, suspended likewise the operation of the limitation; and so that case decides, when it holds that the title relates back to the period of its inception.

The opinion of the court was delivered by

ARMSTRONG, J.—This is the third time that this case, in one shape or another, has found its way into this court. The present is an action of trespass *quare clausum fregit*, for taking and carrying away ore, &c. The plaintiff, Elias Baker, claims title to the land from which it was taken, by virtue of a warrant granted to William D. McKiernan on the 6th of August, 1844—on an application of the 3d of August, and a survey made thereon, on the 10th of August, and 12th and 13th of September, 1844, and by deed from McKiernan dated the 5th of December, 1846, conveying the tract containing 50 acres 137 perches to him. No exception was taken to the regularity of the plaintiff's chain of title from the warrantee to himself. The pleas were not guilty, and the statute of limitations. On the trial of the cause, the taking and carrying away of the ore having been proved, the defendants proposed to prove, " that an improvement was made *near* the place where the alleged trespass was committed, by Thomas Bracken and Thomas C. Wakefield, before the year 1822; that they had a survey of their claim made by Meek Kelly, Esq., on the 8th of November, 1822, embracing the land on which this trespass was alleged to have been committed; that the said improvement was continued and kept up until the present time; that the said Bracken and Wakefield sold and conveyed the land embraced in their said survey to Samuel Misner, who sold to David Stewart about the 1st of August, 1844, before the date of the warrant to William D. McKiernan, under which the plaintiff claims; and that David Stewart and the defendants were in the actual possession of the land on which said trespass is alleged to have been committed, claiming title under said improvement at the time it was committed." This offer was rejected by the court, and the propriety of its rejection makes it necessary to look into the nature of the defendants' claim. It seems that on the 7th of August, one day after McKiernan had procured his warrant, a warrant was granted

[King v. Baker.]

to David Stewart, for 50 acres of unimproved land, adjoining other land of his purchased from Samuel Misner, being the same land for which McKiernan had applied. Stewart, having as yet no survey on his warrant, entered a *caveat* against the acceptance of McKiernan's survey, relying then mainly on the improvement, which by the offer it appears he purchased of Stewart. The *caveat* was heard before the board of property, and decided in favour of the McKiernan survey, on the 2d of March, 1846.

By the 11th section of the Act of 1792, when any *caveat* is determined by the board of property, the patent shall be stayed for the term of six months, within which time the party against whom the determination of the board is, may enter his suit at common law, but not afterwards. David Stewart, availing himself of the privilege of this act, brought his ejectment to June Term, 1846, against McKiernan, and within the time limited, for the land on which the trespass was committed. And on the 26th June, 1854, a jury being called, plaintiff suffered a nonsuit. By this, the title of McKiernan to the land embraced in his warrant, and on which the trespass was committed, became complete; as well against the warrant granted to Stewart himself, as the improvement and survey made for Bracken & Wakefield (so far as it interfered with the McKiernan survey), both being owned by Stewart at the time the *caveat* was decided against him. It is clear that the warrant to Stewart himself for 50 acres, and the survey for Bracken & Wakefield, were separate claims. The former he asserted in his application to be unimproved, and in it calls for the improvement on the latter as adjoining. The offer is not to show an improvement on the 59 acres of plaintiff when the ore was taken; but it proposes "to prove that an improvement was made *near the place* where the alleged trespass was committed" by Bracken & Wakefield before the year 1822; that their survey embraced the land on which the trespass was committed; and that they were in the actual possession of the land in dispute. Now, it is evident that the possession here referred to, when extended over the McKiernan lines, was a mere claim of, and not an *actual* possession; for on this tract there was no improvement save that which constituted the trespass. Beside, all the right Stewart had to this land must be taken to have been passed upon, and definitely settled against him in his ejectment in June, 1854. The endeavour, therefore, to cover the McKiernan survey, which was unimproved, and claim possession of it, by virtue of an improvement on an adjoining tract, is but an adroit attempt to extend the shadow where the substance cannot reach. And it fails to furnish sufficient reason for the admission of the offer which was rejected by the court.

To give the claim of defendant the most expanded extent to which it is entitled, what is it? In Shoenberger *v.* Baker, 10

[King *v.* Baker.]

*Harris* 400, where the facts of this case were fully brought before the court below, in answer to a point bringing up the question of possession Judge Burrell there " expressed the opinion that the possession on part of Stewart, alleged as commencing in August, 1844, was a scrambling possession, not unbroken; and that such possession, or that of those following, if for the mere temporary purpose of digging ore on the land, was not such an actual possession as to oust the constructive possession of the true owner of the tract." And although this was, among other reasons, assigned for error, the cause was not reversed on this ground, but because the " right of either party to maintain trespass against the other for an injury to the land in dispute, was suspended until the title should be finally settled in the ejectment." It was in consequence of this that that action was discontinued, and the present action instituted. The facts are understood to remain the same. There are two things in connexion with this cause which seem now indisputable. First, that the plaintiff, Elias Baker, is the absolute owner of the land on which the trespass was committed. Second, that the defendants took and carried away the ore from the land. In the case cited, 10 *Harris* 403, the court say, " the statute makes the determination of the board of property conclusive upon all parties to the *caveat* who are *sui juris*, and not beyond sea, unless ejectment be brought within six months." This establishes the first proposition, and the jury have found the facts to establish the second. Why then should not the defendant pay for the property taken ?

I know it is said in *Chitty's Pleading*, vol. 1, p. 175, that " the gist of the action is the injury to the possession, and unless at the time the injury was committed, the plaintiff was in the actual possession, trespass cannot be supported," and to this may be traceable most of what is said in our books on the subject. But is this principle so founded in reason, and so called for by necessity, as to admit of no exception to its universality ? I think not. Every action for mesne profits, after recovery in ejectment, is for acts done at a time when the plaintiff was not in possession. And what is this but an action of trespass *vi et armis ?* The action of ejectment itself is but an action of trespass, in which, upon the proper notice given, a recovery may be had for injuries to the freehold while the plaintiff was out of possession. In Caldwell *v.* Walters, 10 *Harris* 378, it was held that the " action for mesne profits cannot be sustained by one who has recovered in ejectment, but never took possession." This rather proves, that although the plaintiff may not be in possession of the *locus in quo*, at the time the injuries are committed, he must be at the time the action is brought. For, says the case, " the right of the true owner to the use and profits of the land is suspended until he regains possession, either by an entry or under a legal judgment." And it

[King *v.* Baker.]

is further remarked, that the "writ of *habere facias possessionem* is not in all cases indispensable. If the possession is voluntarily given up, the right to institute the action for mesne profits is as clear as if it had been forcibly taken under a writ :" 7 *Cowen* 36. Where land is unimproved, I apprehend a writ of possession, after recovery in ejectment, would be but matter of form. When Stewart, after the decision on his *caveat*, brought his action of ejectment against Baker & McKiernan, in 1846, and became non-suit in 1854, it left defendants in possession, and it is fair to say, that as against him it related back to the inception of their title, and from the moment of the nonsuit, they stood as parties having recovered in ejectment, re-entered, and entitled to their action for mesne profits. And Stewart, in the position of one who had voluntarily relinquished all he had claimed, was thrown back to the condition of an intruder or disseisor who had surrendered possession. If A. disseise B., and C. disseise A., and afterwards B. re-enter, he may maintain an action of trespass against C., because by the re-entry of B. he reduces the possession to himself from the time of the first possession : *Bac. Abr.* title Trespass, G. 497. In Shoenberger *v.* Baker, already cited, 10 *Harris* 404, where the same facts came in review, Justice BLACK remarked, "If the plaintiff succeeds in getting a patent" (that is, entitles himself to one), "under the law which authorizes the ejectment, his wrongs can then be fully redressed. His title will not only be full, perfect, and indisputable, but will relate back to the period of its inception, and give him all the rights which he would have had under it if no *caveat* had been entered." Now the ejectment having been settled in favour of the plaintiff—his title established, and having possession at the time this suit was brought, and such possession by virtue of his title at the time the trespass was committed as the law required, and as the suspension of the plaintiff's right to sue prevented the statute of limitations from running, nothing remains to preclude a recovery.

Judgment affirmed.