## LAFAYETTE GOULD v. DWELLING-HOUSE INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 17, 1890—Decided May 12, 1890.

[To be reported.]

1. When, in an action upon a policy of insurance, objection is made to the admission of the proofs of loss, upon the ground that they were not furnished within the stipulated time, it is more regular to hear testimony as to an alleged waiver of the stipulation, before admitting them in evidence; but, if testimony sufficient to carry that question to the jury be afterwards given, their admission without first requiring the waiver to be proved will not be error.

2. If the insured, in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy respecting proofs of loss, good faith requires that the insurer shall promptly notify him of any objections thereto, so as to give him the opportunity to obviate them; and mere-silence may so mislead him to his disadvantage, as of itself to be sufficient evidence of waiver by estoppel.†

3. If, however, without valid reason, the insured fail to comply with such requirements at all or within the stipulated time, mere silence, or investigation, or even negotiation by the insurer, will not waive a liability which, under the terms of the policy, is discharged by such failure; and nothing will do that, short of an express agreement, or a change of position by the insured to his disadvantage reasonably induced by the insurer's acts.

4. Whether a strict limitation as to time will preclude the subsequent correction of defects in proofs duly furnished, not decided; nevertheless,

---

† See McFarland v. Insurance Co., post, 590.

Statement of Facts.

the fact that when the proofs were received there remained but three days of the period specified in the policy, which might not prove sufficient to enable the insured to obviate the defects, will not relieve the insurance company from the obligation, by prompt notice, to give him the opportunity.

5. The settled rule that offers of compromise are not admissible as evidence of the plaintiff's claim, is not transgressed by receiving proof of the mere fact that an insurance company made an offer of settlement, when such testimony is admitted solely upon the question of waiver of a stipulation as to the time of furnishing proofs of loss, and is carefully limited to that in the charge to the jury.

6. When an applicant for fire insurance informed the insurer's agent that the property was encumbered to a certain amount, whereupon the insurer issued a policy providing that, unless otherwise expressed, it should be void if the property be subject to liens, or the hazard be increased, judgment liens existing or subsequently entered, will not avoid the policy, if the amount stated be not exceeded: Kister v. Insurance Co., 128 Pa. 553.

7. When a policy contains a provision that it shall be void if assigned before a loss, without the consent of the insurance company indorsed thereon, and the company has placed upon it an indorsement making the loss, if any, payable to a third person, such indorsement operates as a ratification of a prior agreement of the insured to the same effect, made without the company's consent.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 2 July Term 1889, Sup. Ct.; court below, No. 219 September Term 1888, C. P.

On June 8, 1888, Lafayette Gould brought assumpsit against the Dwelling-house Insurance Company, of Boston, upon a policy of insurance against fire, issued by the defendant to the plaintiff. The defendant's plea was non-assumpsit.

At the trial on February 11, 1889, it was shown as follows:

In September, 1887, C. S. Russell was the agent of the defendant company at Towanda, Pennsylvania, under a written certificate of appointment, executed on behalf of the company by its president and secretary, in which the extent of his authority was thus defined: "with authority only to sign policies of insurance, and renewals of same, to consent to assignments and transfers of property covered by policies or renewals signed by him, and to collect and transmit premiums therefor. Said agent to be governed in all respects by the instructions to

Statement of Facts.

agents which have been, or may hereafter be issued by this company. . . . ."

On September 10, 1887, Russell, on behalf of the defendant company, wrote and issued to the plaintiff a policy, bearing date that day, insuring against loss by fire, during a period of three years thereafter, the plaintiff's dwelling-house and certain articles of personal property therein, and his barns and certain personalty therein, and containing the following provisions:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if there is or shall be other prior, concurrent or subsequent insurance, whether valid or void, on property covered in whole or in part by this policy; or, if the hazard be increased in any manner; or, if mechanics be employed in building, altering, or repairing the within described premises except as above provided; or, if the interest of the insured be other than unconditional and sole ownership, free from all liens whatever; or, if the subject of insurance be a building on ground not owned by the insured in fee-simple; or, if the subject of insurance be personal property and be or become encumbered by chattel mortgage; or, if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without vacancy or other increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or, if this policy be assigned before a loss; . . . . .

"In case of loss or damage under this policy, the insured shall give immediate notice thereof in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon; and within thirty days after the loss or damage by fire or lightning, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge of the insured as to the time and origin of the loss by fire or lightning; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all encumbrances thereon; the title to and encumbrances on the ground on which the property

Statement of Facts.

insured is situate; all other insurance, whether valid or not, covering any of said property; a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described, and the several parts thereof, were occupied at the time the loss or damage took place; . . . . .

"The insured, as often as required, shall exhibit to any person designated by this company, all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same. . . . .

"In the event of disagreement as to the amount of loss, the same shall be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; . . . . .

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proofs of the loss herein required have been received by this company at its home office in Boston, including an award by appraisers when appraisal has been required. . . . .

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless the insured shall have fully complied with all the foregoing requirements, nor unless commenced within six months after the fire, or damage by lightning; . . . . .

"The company may terminate this contract at any time by giving notice to that effect, and in such event it shall refund the unearned premium pro rata. . . . .

"By the acceptance of this policy the insured covenants that the application herefor shall be and form a part hereof, and a

warranty by the insured, and the company shall not be bound by any act or statement made to or by any agent unless inserted in this contract.

" This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto; and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The plaintiff's dwelling and nearly all of its contents were destroyed by fire on March 10, 1888. On March 12, 1888, one V. S. Vincent, at the request of the plaintiff, wrote to Russell, notifying him of the fire. Mail communication having been interrupted in consequence of a severe storm, this letter was not received by Russell until March 15th, when he forwarded by mail to the company's home office, and also to its general agent, notice of the fact of loss upon blank forms provided for the purpose.

On April 3, 1888, the plaintiff sent to the company a paper, containing proofs of his loss, by registered letter received on April 6, 1888. This paper was not printed in a complete form in the paper-books, but it was impliedly stated in the paper-book of the appellant to contain nothing but a schedule of the items of loss, and the amount claimed for each item.

The proofs of loss being produced by the defendant upon notice, and identified by the plaintiff, testifying on his own behalf, the plaintiff's counsel offered them in evidence for the purpose of showing compliance by the plaintiff with the terms and requirements of the policy.

Mr. Williams: We object to the offer for the reason that it does not comply with the terms or conditions of the policy in scarcely a single particular.

Mr. Mercur: I propose to follow this by proof that the com-

pany never returned the proofs of loss to the plaintiff, and never objected to them at any time, until after the suit was brought; and never pointed out any defects in them, nor asked us to submit any other proofs of loss; so that if they were defective, the company has waived all imperfections. And I propose to follow this by proof that the adjuster came on, and that after making an examination of the loss he made an offer of compromise, without showing what that offer was.

Mr. Williams: We object to the introduction of the proofs of loss in evidence, for the reason that it does not comply with the conditions of the policy, as follows: It does not state the interest of the assured in the property lost; it does not state the encumbrances on the property insured, the title to, and encumbrances on the ground on which the property insured was situated; it does not state whether there was other insurance, or not; it does not state whether there has been any changes in the title, use, occupation, location, possession, or exposures of said property, since issuing the policy; it does not state in any form how the fire occurred or originated; it does not state that the policy has been assigned or transferred to other parties, or that any other parties have any interest in it, all of which is required by the policy of insurance; and that the proofs of loss do not set forth that the plaintiff had the sole ownership, free from all encumbrances, of the property insured.

By the court: Objection overruled, and proofs of loss admitted in evidence, exception.[1]

The plaintiff then testified as follows: Q. State if these proofs of loss were ever returned to you by the company? A. No, sir. Q. State if the company ever made any objection to them, before the suit was brought? A. No, sir. Q. State whether any defects in them were ever pointed out to you before the suit was brought? A. I don't think there was. Q. After the fire, state whether the adjuster came on and examined the loss? A. Yes, sir. Q. What was his name? A. Mr. McAninch, of Cleveland, Ohio. Q. State whether, after making an examination, he made you an offer of settlement? A. Yes, sir.

Objected to.

By the court: Objection overruled; exception.[2]

Statement of Facts.

The plaintiff testified further that the time when the adjuster came to see him was early in May, and by himself and other witnesses showed the amount of his loss.

Upon the face of the policy appeared the following indorsement: "November 23, 1887, at request of assured, loss, if any hereunder, payable to J. C. Robinson & Son, as their interest may appear. C. S. RUSSELL, Agent." With regard to this, the plaintiff testified that prior to the date of the indorsement he agreed verbally with Robinson & Son that the policy should be transferred to them as security for judgments which they held, and the indorsement was made in pursuance of that agreement.

The plaintiff having rested, the defendant put in evidence judgments entered against the plaintiff as follows:

J. H. McKee, for use, March 16, 1885,......$ 42.50, costs and interest
J. C. Robinson & Son, December 1, 1885, ... 514.25,     "          "
        Same      January 21, 1887,..... 110.78,     "          "
        Same      September 23, 1887,... 150.00,     "          "
        Same      September 23, 1887,... 284.09,     "          "

In rebuttal, the plaintiff called the agent Russell, and made the following offer:

Mr. Mercur: We offer to show by the witness on the stand that, at the time the insurance was applied for, the agent of the company, the witness on the stand, was notified that the real estate was encumbered to the amount of about $2,000, and that that fact was communicated to the company.

Mr. Williams: We object to it, that the copy of claim served upon us makes no mention of that fact, and that we were bound to defend only upon the claim set forth in the copy served; that there is no indorsement upon the policy of insurance of the liens against the property, as required by the terms and conditions of the contract of insurance.

Mr. Mercur: We also offer to show by the witness on the stand that when he wrote the policy for the plaintiff in this case, he notified the company of that fact, and sent them a copy of the application, and all the information he had in relation to it; and that the information he sent them at the time this policy was written was the fact that the land, upon which the several buildings insured by this policy stood, was encumbered to the amount of about $2,000; and if that indorsement

Charge of Court below.

had to be made upon the policy, it is the fault of the company that it is not indorsed, and they cannot take advantage of the omission which was made through their own fault.

By the court: Objection overruled; exception.[3]

The witness then testified to the facts stated in the offer.

At the close of the testimony the court, SITTSER, P. J., charged the jury in part as follows:

The policy requires that notice of the loss shall be immediately and speedily given to the company. This loss occurred, according to the testimony of the plaintiff, on March 10, 1888. C. S. Russell, who for some purposes, at least, was the agent of the company, testifies that he received notice on March 15, 1888, and that he immediately transmitted that notice to the company, or transmitted a notice to the company. The notice which he received, and his recollection of the notice which he transmitted to the company, have been given in evidence here before you. If you think, from the evidence in the case, that this notice was immediately given to the company, as under the provisions of the policy, then you may find that the company was notified according to the conditions of the policy.

Further objection is made by the defendant, that the policy requires a statement of loss to be made out by the insured and transmitted to the company. The policy sets forth that . . . .

A specification of the property destroyed, commonly called a proof of loss, was furnished by the plaintiff to the defendant company. That statement, or proof of loss, is not such as is required by the contract of insurance. [But the plaintiff claims that the defendant company received it, and made no objections on account of any defect in it, and that their adjuster came on to the ground afterwards, with a view to adjust the loss, and made a proposition to the plaintiff to compromise the claim. And we say to you that if you find this claim on the part of the plaintiff to be true ; if you find that the company received that statement or proof of loss given in evidence here ; that they retained it without making any objections on the ground of deficiencies in it, and afterwards sent an adjuster to adjust the loss, and made an effort to compromise the claim, you may, if you think the evidence justifies it, find that

Charge of Court below.

the company waived any objections to the proofs of loss, and consider that part of the plaintiff's case made out.] [4]

Another objection made by the defendant to a recovery in this case, is that set forth in their first point, in which they request the court to instruct you as follows:

1. That the hazard of the insurance, under the policy given in evidence in this case, has been increased by the entry of judgment liens against the real estate insured by said policy, both before and after the insurance of the same, without notice to the defendant, and having the same indorsed on said policy as required by the conditions thereof, and the plaintiff cannot recover.

Answer: This point of the defendant is not affirmed. There is a provision in the policy, in substance, that if there are liens upon the property at the time the insurance is made, and that fact does not appear in writing upon the policy, that the policy shall be void. In reply to that, the plaintiff sets up that at the time he made his application for this policy, and at the time it was issued, he informed C. S. Russell, the agent, that there were liens to the amount of about $2,000 upon this property; and they have called the agent, C. S. Russell, who testifies as to transmitting to the company the notice of the fact that that statement was made to him. This is a question which is entirely for the court, and upon which it is my duty to instruct you as to what is meant by this provision of the policy: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if there is or shall be other prior, concurrent or subsequent insurance, whether valid or void, on property covered in whole or in part by this policy; or, if the hazard be increased in any manner; or, if mechanics be employed in building, altering or repairing the within described premises, except as above provided; or, if the interest of the insured be other than unconditional and sole ownership, free from all liens whatever."

[It is contended on the part of the defendant that this provision, that the property be free from all liens whatever, refers not only to liens which may exist at the time the policy is issued, but also to liens which may be afterwards entered against the property during the life of the policy. We do not agree

with that view of the defendant. We think the expression here, with reference to being free from all liens whatever, refers to the time when the policy is issued, and not to liens which may be afterwards entered against the property.] [5] For, in speaking of this subject they use this language : " Or, if the interest of the insured be other than the unconditional and sole ownership, free from all liens whatever." Below, in this same clause, speaking of insurance upon personal property, they say, " Or, if the subject of insurance be personal property, and be, or become encumbered by chattel mortgage," and so they have added the words, " or become encumbered." But in speaking of the real estate they say, " If the interest of the insured be other than unconditional and sole ownership, free from all liens whatever," and do not add the words, " or become afterwards encumbered by liens." If they intended to make the existence of subsequent liens a cause for the absolute forfeiture of the policy, we think they should have so stated in the policy, in distinct language ; and, taking that view of it, we are of the opinion that that clause of the policy has reference only to such liens as were upon the property at the time the policy was issued.

In reference to this first point of the defendant, which we have just read to you, they claim that the hazard was increased by the entry of judgment liens against the real estate insured by the policy, both before and after the issuing of the same, without notice to the defendant, and having the same indorsed on the policy as required by the conditions thereof, and therefore they ask us to say to you that the plaintiff cannot recover. We will dispose of the first branch of that first ; that is, of the effect to bé given to the fact that liens existed against this property which were not indorsed upon the policy, at the time it was issued, and then we will discuss the effect to be given to the liens which were entered afterwards, during the life of the policy.

Upon this point we say to you that C. S. Russell was the agent of the company, and his authority is shown by the writing given in evidence. He had authority to sign the policy of insurance, to receive and transmit to the company the premium, the company reserving the right to reject any risk which he may take for them. This means that he may issue a valid

Charge of Court below.

policy, and bind the company to the payment of the loss, according to the terms of the contract, subject, however, to their disapproval. A clause in the policy requires that if the property insured be not free from all liens, that the policy shall be void, unless the consent of the company to insure the property under such circumstances be indorsed upon the policy. There is no such indorsement on the policy, and evidence has been given by the plaintiff on the subject of notice of liens to the agent, C. S. Russell. The plaintiff claims that he informed C. S. Russell, the agent, that there were liens to the amount of $2,000 on the property, and that Mr. Russell then issued the policy and received the premium. It would be a fraud upon the plaintiff for the defendant to receive his money upon a policy of insurance, knowing the same to be void at the time it was issued and placed in his hands. [If the plaintiff informed the agent that there were $2,000 liens against the property, at the time of making the application for the insurance, and the agent, or the company, knowing the fact, and that the policy was void unless the fact was indorsed thereon, takes his money, without waiving that provision, it would be most unjust; and, rather than impute such conduct to the defendant, you may find, if you think the evidence justifies it, that the company waived this provision of the policy.] [6]

There is a provision in the policy that no agent or officer shall have power to waive any of the stipulations of the policy, unless it be by writing indorsed on the policy. [But this refers to express waivers, and not to waivers flowing from the conduct and acts of the company, where the agent or officer has power to do the act from which the waiver is inferred. To illustrate : . . . . We are of the opinion that this provision, that the agent shall have no authority to waive any provision or condition of the policy, unless such waiver, if any, be written upon or attached thereto, relates to express waivers, and not to such as arise from the conduct and acts of the company, through their authorized agents.] [7]

The plaintiff's counsel have requested us to instruct you :

1. The evidence showing that the plaintiff represented to the defendant before the policy in suit was issued, that there were encumbrances against the property of about $2,000, and that at the time of the fire they did not exceed that amount,

Charge of Court below.

then the entries of the two judgments, of $150 and $284.09, respectively, against the plaintiff after the policy was issued, do not make it void and the plaintiff is entitled to recover.

Answer: We say to you that, under our instructions, the entry of judgments against the plaintiff after the execution of the policy would not render it void, and this first point of the plaintiff is affirmed.[8]

The defendant's counsel have asked us to instruct you:

2. That the plaintiff suffered and permitted the property mentioned in this policy of insurance, put in evidence in this case, to become encumbered with judgment liens without the consent of the defendant company indorsed thereon; therefore, the plaintiff cannot recover.

Answer: This point is not affirmed.[9]

3. The plaintiff does not have that unconditional and sole ownership free from all liens whatever, to the buildings insured under the policy in suit, required by the policy, because of the judgment liens entered against the same both before and after the issuing of the said policy, the same not being indorsed on said policy as required by the conditions of the same.

Answer: This point is not affirmed.[10]

4. The assured assigned the said policy of insurance to J. C. Robinson & Son, before the loss by fire, without the consent of the company defendant indorsed thereon as required by the conditions of the said policy; therefore, the plaintiff cannot recover. A verbal assignment of the policy is a good assignment of it.

Answer: We affirm that part of the point which avers and requests us to instruct you that a verbal assignment of the policy is a good assignment of it. That is, it is good between the parties to it. We do not affirm the first part of this point, and we do not say to you that "the assured assigned the said policy of insurance to J. C. Robinson & Son before the loss by fire, without the consent of the company defendant indorsed thereon as required by the conditions of the said policy," because it seems that there is an indorsment on the policy of this character: "November 23, 1887; at request of assured, loss, if any hereunder, payable to J. C. Robinson & Son as their interest may appear. C. S. RUSSELL, Agent."[11]

5. Under the evidence in this case the plaintiff cannot recover, and your verdict must be for the defendant.

Charge of Court below.

Answer: This point is not affirmed.[12]

We desire to instruct you upon another question, and that is with reference to passing upon the question of whether the risk, or hazard, was increased by reason of the entry of these judgments after the issuing of the policy. . . . . There is a provision in the policy that the policy shall be void if the hazard be increased in any manner. [We do not say to you as a matter of law that the hazard was increased by reason of the entry of these judgments after the policy was issued. But we submit the question to you, as a question of fact, for you to determine from all the evidence in the case, whether the hazard was increased by reason of the entry of these liens.] [13] The reason why it is claimed that the entry of liens increases the hazard, as I understand it, is that a man owning property that is unencumbered, in case of loss would expect to receive all the insurance. But if the property is sold or otherwise disposed of, the lien creditor will take the money, to the amount of his lien, and it is therefore supposed that there is an additional temptation to the owner of the property to burn his own buildings, so that he may get the value of the property from the insurance company, and not be compelled to pay the liens upon it; and it is from this, as I understand it, that the additional hazard arises. In passing upon that question, you will take into consideration all the evidence in the case. These judgments that were entered after the policy was issued were entered on September 23, 1887. And by the indorsment upon the policy, under date of November 23, 1887, the right to take the money arising from this loss was conferred upon the lien creditor, so far as his interest may appear. We were about to say to you that you might take into consideration the fact that the plaintiff in this case assigned a portion of the policy to the lien creditor, being under the impression that the assignment had been made prior to the entry of the judgment, as bearing upon the question of whether the hazard was increased or not, by the entry of the liens. [But it seems that this assignment was made after the judgments were entered, so that this circumstance would be of no consequence in disposing of that branch of the case.] [13] You will now take this case and dispose of it according to your best judgment, under the law as you have received it from the court.

The verdict of the jury was in favor of the plaintiff for the sum of $1,443.08. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendant took this appeal, assigning for error:

1–3. The admission of the plaintiff's offers. [1 to 3]

4–7. The parts of the charge embraced in [ ] [4 to 7]

8. The answer to plaintiff's point. [8]

9–12. The answers to defendant's points. [9 to 12]

13. The parts of the charge embraced in [ ] [13]

*Mr. H. N. Williams* (with him *Mr. N. C. Elsbree* and *Mr. R. H. Williams*), for the appellant:

1. The alleged proof of loss should have been rejected, because of its utter failure to comply with the provisions of the policy upon the subject. The defendant did nothing to mislead, delay, or in any way control the insured in furnishing to it proofs of loss. The alleged proofs of loss were not received by it until April 6th, when but three days of the stipulated period for furnishing them remained, and there was not time to return them for correction and have corrected proofs sent in: it did nothing whatever until some time in May. All that is claimed to have been done then, is that a person came upon the premises more than sixty days after loss, claimed to be an adjuster of the company, examined the premises, made propositions of settlement which were rejected, and then departed. This is neither a waiver of proofs of loss nor even evidence thereof: Mueller v. Insurance Co., 87 Pa. 404; Beatty v. Insurance Co., 66 Pa. 9; Trask v. Insurance Co., 29 Pa. 198. Besides, the defendant is protected by the express stipulations of the policy, excluding any waivers by implication and limiting the power of its officers and agents to waive the provisions and conditions of the contract.

2. The testimony as to the offer of compromise should not have been admitted, as the law encourages settlements of litigation. A suitor has a right to buy his peace. And the fact that Gould informed the agent that there were encumbrances to the extent of $2,000 upon the property, did not cure the omission to procure an indorsement on the policy of permission to have the real estate encumbered. In view of the absolute and unqualified terms of the stipulation upon that point,

Gould should have required such an indorsement, or refused to accept the policy; and it will not do to say that its omission was the fault of the defendant. In Pennsylvania the insured is held to a strict compliance with the stipulations of a policy, before he can recover in case of loss: Pottsville M. F. Ins. Co. v. Improvement Co., 100 Pa. 140; Kensington N. Bank v. Yerkes, 86 Pa. 230; M. & M. Ins. Co. v. Kunkle, 6 W. N. 234; Universal Ins. Co. v. Weiss, 106 Pa. 25; Nassauer v. Insurance Co., 109 Pa. 512; Girard F. & M. Ins. Co. v. Hebard, 95 Pa. 49; Pottsville Mut. Ins. Co. v. Horan, 89 Pa. 444; Penn. M. F. Ins. Co. v. Schmidt, 119 Pa. 460; Seybert v. Insurance Co., 103 Pa. 285; Busch v. Insurance Co., 6 Phila. 252; Ferree v. Trust Co., 67 Pa. 373.

3. The plaintiff has failed to comply with the provisions of the policy, as follows: (a) The stipulation that the hazard shall not be increased, has been violated by the entry of additional judgment liens: Nassauer v. Insurance Co., supra; Seybert v. Insurance Co., supra; and by the transfer of the policy, before loss, to J. C. Robinson & Son: Ferree v. Trust Co., supra; Girard F. & M. Ins. Co. v. Hebard, supra. (b) The condition that the interest of the insured must be free from all liens has been violated, both by the liens which existed at the date of the policy and by those which subsequently attached; and the construction of the court below excluding from its operation the subsequent liens is a narrow and forced application of it. (c) The condition as to any change in the interest of the insured, "whether by legal process or judgment," etc., applies to the entry of the subsequent judgment liens, as thereby his interest in the property was lessened and another acquired an interest and right therein. (d) That the condition against assigning the policy before loss was broken, there can be no doubt. The indorsement making the loss payable to Robinson & Son, is not, and does not indicate, a transfer of the policy; and the previous parol assignment was therefore not assented to by writing "indorsed thereon or added thereto."

*Mr. Rodney A. Mercur* (with him *Mr. James H. Webb*), for the appellee:

1. If the proofs of loss were regarded as unsatisfactory,

they should have been returned to the insured, the defects pointed out and a call made for more specific proofs: Ben. Franklin F. Ins. Co. v. Flynn, 98 Pa. 635; Susquehanna M. F. Ins. Co. v. Cusick, 109 Pa. 165; Universal F. Ins. Co. v. Block, 109 Pa. 541; Thierolf v. Insurance Co., 110 Pa. 41; German Am. Ins. Co. v. Hocking, 115 Pa. 406; Com. Union Ass'e Co. v. Hocking, 115 Pa. 413. A particular statement of the loss may be waived by the company, and if there is any evidence from which such waiver may be inferred, it is for the jury: Franklin F. Ins. Co. v. Updegraff, 43 Pa. 350; Farmers' Ins. Co. v. Taylor, 73 Pa. 353; Home Ins. Co. v. Davis, 98 Pa. 280.

2. Formal conditions introduced solely for the benefit of the insurers may be waived by them, not only expressly, but by acts evidencing a recognition of liability, or by a denial of obligation exclusively for other reasons: Inland Ins. and Dep. Co. v. Stauffer, 33 Pa. 404; Commonwealth Ins. Co. v. Sennett, 41 Pa. 164; State Ins. Co. v. Todd, 83 Pa. 279; Farmers' Mut. F. Ins. Co. v. Moyer, 97 Pa. 449; Penna. F. Ins. Co. v. Dougherty, 102 Pa. 568; Snowden v. Insurance Co., 122 Pa. 510; Farmers' etc. Ins. Co. v. Meckes, 10 W. N. 313. Proofs of loss are at best conditions precedent to the action, not the insurance, and the evidence rebutting a technical forfeiture is not to be scanned too closely, when the loss is an honest one: Penna. F. Ins. Co. v. Dougherty, supra.

3. The testimony as to the offer of a settlement was admitted solely to show acts establishing a waiver. Similar testimony was admitted in nearly every one of the cases before cited on the point of waiver, and another conspicuous example of it is Lycoming Ins. Co. v. Schreffler, 42 Pa. 188. The complaint that the policy was avoided by the judgment liens is groundless. The company had knowledge of the liens in existence at its date, and the claim that the policy is void because no indorsement of the company's consent to insure in such circumstances was made, was well disposed of in the charge of the court. The policy contained no provision as to liens entered during its life. But at all events, as the aggregate of liens was never above the sum named by the insured to the agent, as the extent of the encumbrances, the subsequent judgments did not avoid the policy: Penna. etc. Ins.

Co. v. Schmidt, 119 Pa. 449; Kister v. Insurance Co., 128 Pa. 553.

4. In the absence of misrepresentation, the existence of liens does not vitiate the policy: Dwelling-house Ins. Co. v. Hoffman, 125 Pa. 626.  The argument with reference to the assignment to Robinson & Son is based upon an imaginary fact.  Indemnity is the purpose of insurance policies, and such contracts are to be construed liberally for the protection of the insured: Teutonia F. Ins. Co. v. Mund., 102 Pa. 95; Kister v. Insurance Co., supra.  Forfeitures are odious, and will not be enforced where there is any cast of management or trickery to entrap parties into them: Helme v. Insurance Co., 61 Pa. 107; Girard L. Ins. Co. v. Insurance Co., 97 Pa. 30; Kister v. Insurance Co., supra.

OPINION, MR. JUSTICE MITCHELL:

In regard to the first assignment of error, to the overruling of the defendant's objection to the proofs of loss, it would have been more regular and much better practice to have heard the evidence of a waiver first, and then passed upon the admissibility of the proofs of loss.  But if the evidence of waiver was in fact, though subsequently given, sufficient to take that question to the jury, then it was a mere matter of the order of proof, which is within the discretion of the judge.

That a statement was furnished within the stipulated time is admitted, but that it was not such as the policy required we must assume, as the learned judge so charged the jury.  There is, however, nothing to show that it was not in good faith intended by the plaintiff as a compliance with the requirement of the policy.  Under such circumstances, it has often been declared by this court that it is the duty of the insurance company, if it means to rely upon failure to comply with this stipulation, to give immediate notice of its objection, pointing out the defects, etc.: Girard Life Ins. Co. v. Mutual Life Ins. Co., 97 Pa. 24, and cases there cited by the present Chief Justice; Ben. Franklin F. Ins. Co. v. Flynn, 98 Pa. 627; Susq. M. F. Ins. Co. v. Cusick, 109 Pa. 159; Universal F. Ins. Co. v. Block, 109 Pa. 535; Thierolf v. Insurance Co., 110 Pa. 37.  And it is equally settled that the actions of the company, including the failure to return the proofs of loss, or to give notice of the

objections, are evidence for the jury of a waiver: Snowden v. Insurance Co., 122 Pa. 502. The testimony as to what the company did was admitted by the learned judge in the present case as evidence of waiver, and in so doing he followed the line of decisions above cited, and therefore was clearly right.

In establishing this rule in regard to the conduct of insurance companies as to objections to proofs of loss, it is not intended to encroach at all on the doctrines of waiver by estoppel, as laid down in the well-considered and authoritative cases of Trask v. Insurance Co., 29 Pa. 198; Beatty v. Insurance Co., 66 Pa. 9, and others of the same kind. In Trask v. Insurance Co. the policy required that the assured should notify the company of his loss "forthwith," and it was held that a delay of eleven days, unexcused, was a breach of this requirement, and that the fact of the company's receipt of the notice without objection was not sufficient evidence of waiver. This has been called a harsh case as to the time, but nevertheless was followed: Edwards v. Insurance Co., 75 Pa. 378. In Beatty v. Insurance Co., a notice was sent by the insurer, but it was so defective that it was held to be "no statement at all, . . . . . a mere reiteration of the description in the policy;" and SHARSWOOD, J., in delivering the opinion, said, "to constitute a waiver, there should be shown some official act or declaration by the company, during the currency of the time, dispensing with it; something from which the assured might reasonably infer that the underwriters did not mean to insist upon it. . . . After the thirty days had expired without any statement, nothing but the express agreement of the company could renew or revivify the contract." But, notwithstanding the stringent terms in which the rule is thus laid down, the ground of the decision is the entire failure of the insured to send anything that could be considered the statement called for. This is clearly shown by what is immediately added: "Had a statement been furnished within the time, it might have been the duty of the insurers to notify the assured of any merely formal defect, so that it might be remedied." This duty, as shown by the later cases already cited, is now clearly defined and settled, and that these cases are not at variance with the apparently stricter previous rulings is shown by the references made to the latter from time to time. Thus in Lycoming Co.

Opinion of the Court.

M. Ins. Co. v. Schollenberger, 44 Pa. 261, THOMPSON, J., says: "This court has never held that a waiver . . . . . may not take place during the currency of the condition. The cases of Barclay v. Weaver, 19 Pa. 396, and Trask v. Insurance Co., 29 Pa. 200, . . . . . only decide that it did not in those cases, as time for the performance of the condition had passed." And in Imp. F. Ins. Co. v. Dunham, 117 Pa. 473, our Brother CLARK, after citing Trask v. Insurance Co., says, "it is undoubtedly true that, where an insurance company is from any cause discharged from liability, responsibility for the loss will not re-attach by waiver, without proof of authority," etc.

The distinction between the two lines of cases is the time at which the acts alleged to prove waiver are done. Proofs of loss are acts to be done by the assured for the information of the insurer, and the stipulation for them, as said by STRONG, J., in Inland Ins. and Dep. Co. v. Stauffer, 33 Pa. 404, is, "at most, a condition precedent, not to the undertaking of the insurer, but to the right of action of the insured;" and the cases agree that substantial compliance is all that is required. The result of the decisions may therefore be formulated in the following rule: If the insured, in good faith, and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections, so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage, to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel. But if without valid reason he fails to comply with the requirements of his policy at all, or to do so within the stipulated time, then the liability of the company is discharged; and mere silence, or investigation, or even negotiation, will not, in the words of SHARSWOOD, J., in Beatty v. Insurance Co., "revivify the contract." Nothing will do that short of an express agreement, or a change of position by the insured reasonably induced by the acts of the company, and to his disadvantage. Mere disappointment in the expectation of a settlement, even though such expectation be founded on the acts of the company, as in National Ins. Co. v. Brown, 128 Pa. 386, will not be enough.

All of the reported cases may not be easy to bring into entire

conformity with this rule. They are very numerous, and sometimes are decided on their own very exceptional facts. But none of them depart far, if at all, in principle, from the rule; and such as may not be absolutely consistent in its application must be considered as accidental departures from the established general line.

The present case falls within the first branch of the rule. The proofs of loss were furnished within the prescribed time, and it was the duty of the company to give prompt notice of its objections, so that they might be obviated. It is argued that, as the proofs were received only three days prior to the end of the period limited, the plaintiff could not have remedied the defects in time, and therefore notice would have been useless. We will not undertake to say, now, how far the strict limitation as to time may control the right to correct defects in proofs duly furnished. That case will be decided when it arises. Here the proofs were in time, and we need not speculate what the plaintiff might by diligence have done in the three days left to him. It is sufficient for this case that the company gave him no chance. The first and seventh assignments of error are not sustained.

The second and fourth errors complained of seem, at first sight, to come dangerously near transgressing the settled rule that offers of compromise are not admissible. But examination shows that the offer of settlement in this case was not admitted as evidence of plaintiff's claim. Indeed, the fact of loss was not in dispute, nor its amount; and the evidence was admitted on the question of waiver, and was carefully limited to that in the charge. So regarded, it was free from error.

The other assignments raise three questions as to encumbrances not indorsed on the policy; first, was parol notice of the existing encumbrances, given before the issue of the policy, sufficient; secondly, was the condition against encumbrances broken by the entry of the subsequent judgment; and, thirdly, was the interest of the insured changed, or the hazard of the insurance increased, by the subsequent judgments? Bearing in mind that the jury have found that plaintiff, when applying for the insurance, informed the agent of the amount of encumbrances then existing, and that the company issued the policy with such knowledge, and further that, though the items of en-

cumbrance were somewhat changed, the amount stated was never exceeded, this case bears so close a likeness to Kister v. Insurance Co., 128 Pa. 553, that it is not necessary to do more than refer to the opinion in that case to dispose of these questions.

There remains only the question of the agreement that the loss, if any, should be payable to Robinson & Son. The condition of the policy is, that, if it be assigned before a loss without the agreement of the company, it shall be void. But as such agreement is indorsed on the policy, the fact that the qualified assignment, such as it is, was made before the indorsement, even if proved, would be entirely immaterial. The indorsement by the company was a ratification, which is equivalent to prior consent.

Judgment affirmed.