## The Inland Insurance and Deposit Co. v. Stauffer.

A policy of insurance against fire provided that all persons assured, sustaining any loss or damage by fire, should *forthwith* give notice to the secretary, or other *authorized* officer, and as soon as possible after, deliver in as particular account of their loss or damage as the nature of the case would admit of, and produce to the company satisfactory proof thereof: *Held,*

(1.) That proof of notice of the loss, if not waived, was a condition precedent, and essential to the plaintiff's right to recover.

(2.) That the neglect to give such notice could not be compensated by a deduction from the claim of the assured.

(3.) That a director of the company was not an *authorized* officer to whom such notice could be given.

(4.) That such notice might be waived by the insurers; and that the jury might find from the conduct of the parties, whether there had been such a waiver.

A policy of insurance provided that in case of subsequent insurance of the same property, notice thereof should, with all reasonable diligence, be given to the company, &c., in default whereof, the policy should be void; the party effected a subsequent insurance, and before notice the premises were destroyed by fire: *Held,* that it was error to instruct the jury that, if there was no want of reasonable diligence in giving notice, the plaintiff was not in default, there being no evidence that notice was ever in fact given.

ERROR to the Common Pleas of *Lancaster county.*

[The Inland Insurance and Deposit Company *v.* Stauffer.]

This was an action of covenant by Benjamin M. Stauffer against the Inland Insurance and Deposit Company, upon a policy of insurance against fire, issued by the defendants on the 22d December 1856, whereby they insured the plaintiff for the term of four months, against loss or damage by fire, to the extent of $4000, on his stock of grain and flour, contained in a grist-mill, in Penn township, on the Chiques creek. The policy contained the following provisions :—

" In case of subsequent insurance on property insured by this company, notice thereof shall also, with all reasonable diligence, be given to the company, to the end that such subsequent insurance may be endorsed on the policy subscribed by this company, or otherwise acknowledged in writing; in default whereof such policy shall thenceforth cease and be of no effect.

" All persons assured by this company, sustaining any loss or damage by fire, are forthwith to give notice to the secretary, or other authorized officer, and as soon as possible after, to deliver in as particular an account of their loss or damage as the nature of the case will admit of, and to produce to the company satisfactory proof thereof."

On the 9th April 1857, the premises were destroyed by fire. On the following morning, the plaintiff sent notice to Philip Arndt, who was a director of the company; and also to Nathan Worley, the agent of the Northern Mutual Insurance Company, with whom the building was insured. Arndt and Worley returned with the messenger, and inspected the ruins; and Arndt promised the plaintiff that he would notify the company, stating that he should go to Lancaster, where the office of the company was situated, on the next day, or the following Monday. Five or six days afterwards, the president, in company with another director, came from Lancaster, and examined the scene of the disaster. The president made no complaint that notice had not been given; and on the 20th, the plaintiff gave to the secretary a formal written notice of the fire and of his loss.

On the 30th March 1857, ten days before the fire, the plaintiff made application for an additional insurance of the same property, to the amount of $4000, to the agent of the Farmers' Mutual Insurance Company, and paid the premium. He received no policy—the agent not being authorized to issue policies; his principals reserving the right to reject any application made through him, and to return the premium. When the fire occurred, the policy, though made out, had not been delivered to the plaintiff, nor had he received notice that it had issued. He resided twenty-five miles from the office of the second insurers, and fifteen miles from that of the first. After the fire, the Farmers' Mutual Insurance Company paid the plaintiff $3000 on their policy. No

[The Inland Insurance and Deposit Company *v.* Stauffer.]

notice of the second insurance was shown to have been given to the defendants.

On the trial, the plaintiff offered to prove by a witness, that the plaintiff, on the morning after the fire, sent him to Manheim, for Philip Arndt, to give him notice of it; and that he did give such notice. The defendant objected, but the court admitted the evidence, and sealed a bill of exceptions.

The plaintiff also offered to prove by Nathan Worley, what Philip Arndt said to the witness about the plaintiff having notified him of the loss. The court admitted the evidence, and the defendant excepted.

The court below (HAYES, P. J.), in answer to points presented by the plaintiff and defendants, instructed the jury as follows:—

"The defendants contend that no matter what the plaintiff's loss of grain and flour may have been, he is not entitled to recover anything from them on this policy of insurance.

"1st. Because he failed to give notice of his loss, according to the conditions of the policy; and

"2d. Because he obtained a subsequent insurance for the same property in the Farmers' Mutual Insurance Company, of which he did not give notice to the defendant, as the conditions of the said policy required.

"The fire occurred in the night. The next morning, the plaintiff sent a messenger to Philip Arndt, at Manheim, giving him notice of his loss, and requesting him to come and view the premises; and he returned with the messenger, examined the policy on the spot, looked over the premises and saw the damage which had been done. He was one of the directors of this company, and on the question being asked, undertook to give notice to the board, of which he was a member. On the following Wednesday or Thursday, the president of the company, Dr. Muhlenberg, and Mr. Eshleman, one of the other directors, visited the place and examined the condition of things as they then appeared. On the 20th of April, the plaintiff delivered in his particular account of his loss and damage.

"The first question is, if he did not thus fulfil the requirements of this 9th clause of the policy, what is the consequence? Did he thereby forfeit all the benefits or advantages of this policy? Surely not. Not by the terms of the instrument, for there is no such condition expressed—not in reason or justice. Having undertaken to give the notice required—if he failed therein or neglected—it would furnish the defendants with just cause to claim such a deduction from his demand of indemnity for his loss as would compensate them for any damages they may have sustained, by reason of his failure to give the required notice, or deliver in his particular account of loss; and the defendants would have to

[The Inland Insurance and Deposit Company *v.* Stauffer.]

show and prove their damages, before they could ask a jury to make such a deduction.

"But, in the *second* place, were the acts and proceedings of the plaintiff, a compliance with the requisition in this 9th clause of the policy? He was to give notice forthwith to *the secretary, or other authorized officer.* In the opinion of the court, Philip Arndt, being a director of the company, was an authorized officer in the view and meaning of this clause—and notice was given to him by sending off a messenger the next morning, requesting him to come and see; which he did. *Forthwith,* means without unreasonable or unnecessary delay; and if the jury believe that this message, sent the next morning to Manheim, was without such delay, it was sufficient notice. But in addition to this, when Philip Arndt came upon the premises, and saw the destruction, and examined it with the policy before him, and when Stauffer asked him—shall I give notice to the company, or will you? he said, I will give them notice. I am going into Lancaster, to-morrow (which was Saturday), or on Monday, and I will give them notice. And that he did so, seems very evident from the fact, that the president and another director appeared upon the ground a few days afterwards, and examined for themselves.

"The statement of his losses he handed in on the 20th of April. That is required to be done, not forthwith, but as soon as possible after, which was probably intended to allow such further time as the circumstances might show to be reasonable.

"The 7th clause of this policy provides, 'that in case of subsequent insurance on property insured by the company, notice thereof shall also with all reasonable diligence be given to the company, to the end that such subsequent insurance may be endorsed on the policy subscribed by the company, or otherwise acknowledged in writing; in default thereof such policy shall thenceforth cease and be of no effect.'

"On the 30th of March 1857, the plaintiff applied to the Farmers' Mutual Insurance Company, for an insurance upon this property, to their agent in Lancaster, to whom he paid the premium therefor; and who gave him a receipt for the said *premium.* The policy was not made out for some time afterwards, and it remained in the hands of the agent, Mr. Herr, until after this fire; and it was not until after the fire that it was delivered to him on his call for it. The agent says, he had not given him notice, at the time of the fire, that the policy was made out. The secretary who filled up and made out the policy lives some ten miles south of Lancaster, and the plaintiff lives still further to the north. No notice was given to the Inland Insurance Company of this subsequent insurance.

"Was there then a want of reasonable diligence on the part of the plaintiff in not giving this notice? Reasonable diligence is

[The Inland Insurance and Deposit Company v. Stauffer.]

required by the policy. Whether there was all reasonable diligence in this case, under all the circumstances—the fact of the policy of the Farmers' Mutual Insurance Company not being made out for some time after the application, of its not being delivered to the plaintiff at all, before the fire, of the fact that the actuary or secretary lived at such a distance from the plaintiff, and that the fire occurred but nine days after the application, and before the plaintiff had any notice of the policy having been issued—this is the question.

"This question is for the jury, and if the jury believe that there was no want of reasonable diligence, the plaintiff is not in fault, and his not having given notice to the Inland Insurance Company, at the time of the fire, of the subsequent insurance, would not avail the defendant.

"If he did not fail in using all reasonable diligence to give notice of this insurance in the Farmers' Mutual Insurance Company, to the Inland Insurance Company, his omission does not stand in the way of his recovery against the defendants in this action. This is for the jury to determine—the question of reasonable diligence. If you believe, under all the circumstances, that the plaintiff neglected or failed, with all reasonable diligence to give the Inland Insurance Company notice of the insurance of this same property by the Farmers' Mutual Insurance Company, he cannot recover upon this policy; for, from the time of such failure, the policy ceased, and was of no effect."

To this instruction the defendants excepted; and a verdict and judgment having been given for the plaintiff for $2937.50, the defendants removed the cause to this court, and here assigned for error: 1. The admission of the evidence mentioned in their bills of exception. 2. The charge of the court.

*Stevens* and *Eshleman*, for the plaintiffs in error.—A director is not an authorized officer of the company, to whom notice can be given: Custer *v.* Tompkins County Bank, 9 *Barr* 27; Bank of Pittsburgh *v.* Whitehead, 10 *Watts* 402. By neglect to give a proper notice, the defendants were discharged from liability: Trask *v.* Insurance Company, 5 *Casey* 198. It was a condition precedent: *Angell on Fire and Life Insurance*, § 224–5.

It was error to leave the question of reasonable notice of the second insurance to the jury. This subsequent insurance was made ten days before the fire. There is no evidence that the plaintiff ever made a single effort, or did a single act towards giving the required notice. Reasonable diligence may be a question for the jury in ordinary cases; but he who does nothing for a period of ten days cannot be said to use diligence of any kind, much less *reasonable* diligence. It has been said, that in respect to the diligence required on the part of the insured, in

giving notice of loss, there must be no unnecessary delay—nothing which the law calls *laches: Angell on Fire and Life Insurance*, § 230. The same rule must apply to notice of subsequent insurance.

*Fordney* and *Hiester*, for the defendant in error.—The notice to a director was sufficient: Cumberland Valley Mutual Protection Co. *v.* Schell, 5 *Casey* 33, 35, 38 ; Hall *v.* Insurance Co., 16 *Leg. Int.* 28 ; Commonwealth *v.* Wyman, 8 *Met.* 247. The correctness of the judge's instruction on the question of reasonable diligence in giving notice of insurance in the Farmers' Company, appears from the testimony.

The opinion of the court was delivered by

STRONG, J.—This was an action on a policy of insurance, and the defence was rested on an alleged non-compliance by the assured with the conditions of the policy. One of those conditions was, that all persons assured sustaining any loss or damage, should forthwith give notice to the secretary of the company, or other authorized officer, and as soon as possible after, deliver in as particular an account of their loss and damage as the nature of the case would admit of, and produce to the company satisfactory proof thereof. The purpose of this requirement is obvious. It was to enable the insurers to inquire immediately into the extent of the loss, and to investigate for themselves the circumstances attending the casualty.

The fire in this case occurred on Thursday, the 9th of April 1857. On the following morning, the assured sent notice to Philip Arndt, who was a director of the Inland Insurance Company, and to Nathan Worley, who was agent of other underwriters. Arndt and Worley returned with the messenger, and inspected the ruins. While there, and while talking of the policy, Arndt promised Stauffer, the assured, that he would notify the company, stating that he should go to town (where the office of the company was) on the next day, or on the following Monday. There was no *direct* evidence that he fulfilled this promise. But it was proved that five or six days afterwards, the president of the company, with another director, came from Lancaster to the scene of the disaster (fifteen miles), avowing that they came for the company. Then, the president made no complaint that notice had not been given. On the 20th of April 1857, the assured gave to the secretary of the company formal and written notice of the fire, and of his loss. This was also received, without any intimation that the condition in the policy had not been complied with. In answer to a point propounded by the defendants, and in his general charge, the learned judge who tried the cause instructed the jury that in his opinion, the notice to Philip Arndt was notice to an authorized

officer as required by the policy; that, being a director, he was an authorized officer within the view and meaning of the condition. This is assigned for error.

We are not prepared to assent to this instruction. The parties had a right to designate to what officer of the company notice should be given, and they did. They stipulated for notice, not to the secretary or some officer, but to the secretary or some *authorized* officer. This can only mean some officer authorized to receive such notices. The instruction of the judge ignored the word "authorized." Now, there was no evidence that a director of this company had any authority to receive notice of losses. We know that, ordinarily, notice to a director of an incorporated company is not notice to the company, and for the best reason— directors are usually but consulting managers, not executive agents. They are but occasionally at the place of business, and if the company could be affected by notice to them, no matter how remote they might be from the office, all the benefits of notice might be lost. It was not the duty of Philip Arndt to communicate to the company the fact of a fire having occurred; and, therefore, there is no presumption growing out of his position as a director that he did: Bank of Pittsburgh v. Whitehead, 10 *Watts* 402; Custer v. Bank, 9 *Barr* 27. The stipulation that notice should be given to the secretary or other *authorized* officer, was to enable the assurers to make immediate investigation. Notice to such persons was notice to the company in law, and presumptively in fact, for the authority to receive such notice, implied a duty to communicate it.

Proof of notice of the loss, if not waived, was essential to the plaintiff's right to recover. It was a condition precedent, and so it seems to have been regarded on the trial; but we think it was not proved by communicating the fact to a director, without more; without showing, in addition, that he notified the officers of the company whose duty it was to take action on its receipt. It may be, that the mistake into which the learned judge fell worked no injustice. The jury would probably have found that the requisite notice had been given, had the question been submitted to them, as it should have been. The notice to Mr. Arndt was not a single fact to be separated from all others in the cause. It was proved beyond controversy, that on the receipt of it, he resorted at once to the scene of the fire, and that he there promised to give notice to the company—the notice required by the policy. He undertook to be the agent of the assured for that purpose. A few days afterwards, the president of the company, and another director, came out to view the ruins, meeting there committees from other insurance companies, and avowing that they came on the business of these insurers. Their presence there at that time, is hardly to be accounted for, except on the

supposition that Arndt had performed his promised mission, and that the company had received the required notice. The jury could hardly have come to any other conclusion. But even if they had, the facts above stated, coupled with the conduct of the company, when a formal notice in writing was served on the 20th of April, were evidence from which they might well have inferred a waiver of strict notice. Surely, it cannot be contended, that it was not competent for the insurers to waive performance of a formal condition introduced solely for their benefit. At most, it was a condition precedent, not to the undertaking of the insurers, but to the right of action of the insured. It is no new doctrine, that insurers may waive objection to defective compliance with such a stipulation, or to entire non-compliance, and that such waiver, in effect, strikes the condition out of the contract. Nor need the waiver be express. It may be inferred from acts of the insurers, evidencing a recognition of liability, or even from their denial of obligation exclusively for other reasons : 1 *Cush.* 257 ; 6 *Cush.* 342 ; 1 *Dutch.* (*N. J.*) 78 ; 9 *Howard* 390.

The case of Trask *v.* The State Fire and Marine Insurance Company, 5 *Casey* 198, is not to be understood as unsettling this doctrine. The facts of that case are imperfectly reported. Whether it was stipulated in the policy, that neglect to give immediate notice should avoid the contract, does not appear. It seems to have been assumed, that the insurers had been discharged, and the language of the judge who delivered the opinion, appears to have had reference to the effect of a waiver of the secretary of a company, upon a contract which had no existence. Such is not this case. While in this policy it was declared that a failure by the assured to perform other conditions should render the whole contract void, no such penalty is attached to a neglect to give formal notice of loss. It was a privilege reserved which the company could waive, and leave their engagement in force. Whether they did waive it was, however, a question for the jury.

It need hardly be said, that if there was neither notice nor waiver, there could be no recovery at all. Being a condition precedent, neglect to perform it, if insisted upon, could not be compensated by a deduction from the claim of the insured of the damages which the insurers could show they had sustained. It stood in the way of the plaintiff's right to sue at all.

The other branch of the defence in the court below, was founded upon an alleged breach of another condition. The seventh article attached to the policy, and made a part of it, contained this provision :—" And in case of subsequent insurance on property, insured by this company, notice thereof shall also, with all reasonable diligence, be given to the company, to the end that such subsequent insurance may be endorsed on the policy subscribed by this company, or otherwise acknowledged in writing ; in de-

[The Inland Insurance and Deposit Company *v.* Stauffer.]

fault whereof such policy shall thenceforth cease, and be of no effect." Then follows a provision that in case of plurality of insurance on the same subject, the company should only be rateably liable. Ten days before the fire, Stauffer made application for a second insurance to the agent of another company, and paid the premium. He received no policy. The agent was not authorized to issue policies. His principals reserved the right to reject any application through him, and return the premium. When the fire occurred, the policy, though made out, had not been delivered to Stauffer, nor had he received notice that it had issued. He resided twenty-five miles from the office of the second insurers, and fifteen from that of the first. The counsel for the defendants asked the court to charge the jury that "the plaintiff, having effected an insurance in the Farmers' Mutual Insurance Company, on the same property covered by this policy, on the 30th day of March 1857, of $4000, and not having given notice thereof to the defendants, as required in the policy sued on, cannot recover in this suit." To this the court answered, that this would be correct, if there was, under all the circumstances of the case, a want of reasonable diligence on the part of the plaintiff to give notice. They further instructed the jury that, if there was no want of reasonable diligence, the plaintiff was not in fault, and his not having given notice at the time of the fire, would not avail the defendants; that if he did not fail in using all reasonable diligence, his omission did not stand in the way of his recovery; that the question for the jury was one of reasonable diligence. This seems to us to be a misapprehension of the point propounded. That was a request to have the plaintiff's right to recover negatived, because there had been no notice at all of the second insurance, not because the notice had been unreasonably delayed. Doubtless delay in giving it might have been excusable, and if there had been any proof of notice, either before or after the fire, the reasonable diligence with which it was given should have been submitted to the jury, with all the circumstances which accounted for the delay. But notice at some time was indispensable. We discover in the case no evidence that it was ever given. The attention of the jury seems to have been turned solely to the question whether the circumstances justified delay in giving the notice, and the prior question, whether any notice had ever been given, was overlooked. In this, we think, there was error.

This is all that need be said respecting the errors assigned to the charge of the court. The evidence of the notice to Arndt, followed as it was by his promise, and the subsequent acts of the company, was admissible. Mr. Arndt's statements to Worley, though not strictly evidence, could not have injured the plaintiffs in error.

The judgment is reversed, and a *venire de novo* awarded.