# Welsh *v.* London Assurance Corporation, Appellant.

*Fire insurance—Notice of fire—Evidence of.*

It is conclusive evidence of notice of a fire to a fire insurance company that the adjuster of the company was sent to the place of the fire under instructions from the agent of the company, and was there a week after the fire occurred.

*Proof of loss—Waiver by silence—Estoppel.*

If the insured, in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy respecting proofs of loss, good faith requires that the insurer shall promptly notify him of any objections thereto, so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage as of itself to be sufficient evidence of waiver by estoppel.

*Notice to local agent—Act of June 27, 1883.*

Under the act of June 27, 1883, P. L. 165, proofs of loss may be served upon the local agent of a fire insurance company, who has countersigned the policy.

*Variance between application and policy—Mistake of agent—Life estate.*

Where a life tenant of real estate in applying for a policy of fire insur-

151  607
175  360

151       607
22 SC  ²505

151       607
31 SC  ²463
31 SC  ³466

151       607
e 35 SC  228

151   607
f222  ²434

ance describes her interest in the land as " a life lease," but the agent of the company issues to her a policy on the full value of the fee, the company cannot set up as a defence the mistake of the agent in describing the interest of the assured.

In such a case it was not error for the court to refuse to say as a matter of law, that the policy was void, and it was proper to submit the case to the jury with instructions that the presumption was in favor of the policy being the precise and definite contract, and that the burden of proving the contrary rested on plaintiff.

*Measure of damages—Life tenant as trustee for remaindermen.*

Where the policy of fire insurance is issued to a life tenant for the full value of the fee, and the full premium is accepted by the company, and there is uncontradicted evidence which tends to show that the life tenant intended to insure the property for herself and the remaindermen, she may recover the full amount of the policy as trustee for the remaindermen.

*Assignment of grounds for refusal to pay—Estoppel—Immaterial error.*

In an action upon a policy of fire insurance it is improper to charge " that if the authorized agents of the defendants refused payment of the loss giving a specified reason therefor to the plaintiff, they must be confined to that reason upon the trial, and the jury should disregard any other defence now made by them."

In this case, however, the judgment was not reversed by reason of this error, because the record failed to disclose any defence which the appellant undertook to make that was improperly shut out by this instruction.

Argued Oct 7, 1892.    Appeal, No. 179, Oct. T., 1892, by defendant, from judgment of C. P. Venango Co., Aug. T., 1891, No. 71, on verdict for plaintiff, Ruhamah Welsh.    Before Paxson, C. J., Sterrett, Williams, McCollum, Mitchell and Heydrick, JJ.

Assumpsit on a policy of fire insurance.

At the trial, before Taylor, P. J., it appeared that plaintiff owned a life interest in real estate under the will of her deceased husband.   In 1888, A. J. Neeley, a solicitor of insurance for Barbour & Dunbar, defendant's agents at Titusville, approached plaintiff on the subject of insuring her personal property and the house and barn in which she had a life interest. There was some conversation between them as to whether the insurance should be taken out in the name of the executors of the will, or in her own name, but it was finally decided that she should make the application herself.   A written application was prepared in which the plaintiff's interest was described as

a " life lease." This application was forwarded to Barbour & Dunbar, and a policy was issued, by mistake, for the full value of the fee. The barn was destroyed by lightning in 1890, and the loss was paid to plaintiff through Barbour. On March 8, 1891, the house and its contents were destroyed by fire. The facts as to the notice of the fire and proofs of loss are stated in the opinion of the Supreme Court.

The court charged in part as follows :

" As to the first grounds of defence, that the plaintiff made a false statement as to the ownership of the property, the application for insurance has been lost, and we have, as written evidence of the contract, only the policy upon its face. It shows an insurance of the property at nearly its full value, and for which plaintiff was the owner in fee ; that she was the sole and absolute owner of the real estate, while the uncontradicted testimony shows that, under the will of her husband, the plaintiff had only an estate for life, which was worth at her age the amount which you have heard detailed in the evidence here ; the whole estate, which by the terms of the policy was wholly insured as the property owned by the plaintiff. But the plaintiff seeks to modify this written agreement by oral testimony, attempting to show that it was understood, and was stated at the time of the making of the contract of insurance that in fact only her interest on the life estate was stated as the interest which was to be insured. A contemporaneous agreement to this policy of insurance, if made at the time, and lost, may be shown by parol here upon the trial. But the presumption of law is, gentlemen, that the policy in the hands of the plaintiff, and read over by her, was notice to her that she had an insurance upon the house as the sole owner in fee, and this policy being a consummation of the contract in writing, it is presumed in law to be the precise and definite contract between the parties, and the burden of proof is upon the party who seeks to change the written contract by parol, to satisfy the jury by clear and satisfactory evidence. Upon this question you have had the testimony of Mr. Neeley, Mr. Barbour, and the other evidence which you will remember. Mr. Neeley, who is the agent of the plaintiff, says he wrote up the application of the plaintiff's interest in the real estate as being a life estate, and the writing made at the time specified a sole ownership in the

plaintiff, and the fact that the house was insured at nearly its full value as shown by the witness for the plaintiff. If this was an honest mistake in thus stating the ownership, or if the agent of the company, at Titusville, issued the policy as he did, knowing the actual state of the ownership, then, if the plaintiff was acting in good faith, the change in the policy from the alleged application would not militate against the plaintiff. Upon the other hand, if the plaintff retained this policy knowing it was for about the full amount of the value of the property, the real estate insured, and that it was insured to her as the sole owner of the property, without notice to the company of the mistake in the contract contained in the policy, and with the intent of collecting the full value of the interest in the fee as the sole owner, it would be such a fraud as would render the policy void, and the plaintiff ought not to recover for any alleged loss upon the burning of the house. . . .

" The plaintiff claims, and asks you to find, that she, under some instructions or intimations from the authorized agent of the company for this purpose, proceeded to make out, to the best of her ability, a statement in writing of her alleged loss, which contained an itemized statement of the personal property destroyed, as well as the house, which had been entirely destroyed. That the same was given to the agent of the defendant company at Titusville, within two or three weeks after the loss occurred, and which has been produced by the defendant and given in evidence here upon the part of the plaintiff. They are not such proofs of loss as would comply with the terms of the contract, and if there were nothing more we would instruct you that the plaintiff could not maintain this action. [But it is contended by the plaintiff, and she asks you to find that the defendants, by their act, not only waived a literal compliance with the terms of the policy, requiring proofs in accordance therewith, but, further, that they are now estopped from setting up this defence in this action for the reason, first, that under the instructions, or, at least, intimations, of the agent of the company in its behalf, she furnished to the company as full and as complete a proof of loss as she believed to be necessary, and that the defendant company retained the same without any notice to her that there were any or further proofs required. Upon this we instruct you in the language of Justice MITCHELL of the Supreme Court:

" ' If the insured in good faith, and within the stipulated time, does what he plainly intends as a compliance of the terms of his policy, good faith equally requires that the company shall promptly notify her of their objections, so as to give the insured the opportunity to obviate them. And mere silence may so mislead the plaintiff to her disadvantage to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel; but if without valid reason she failed to comply with the requirements of her contract at all, or do so within the stipulated time, then the liability of the company is discharged.'

" How was this matter in the present case? Did the plaintiff in good faith make out what she intended and believed to be a compliance with the clause of the policy requiring proof of loss within the time? And if so, did the defendant retain the same without at any time giving any notice that the proofs were defective and not satisfactory to them, and point out the alleged defects to the plaintiff? If so, the jury would be warranted in finding that such alleged defect in the proof of loss was waived by the defendant, and if so found by the jury, it would be no defence to this action. But upon the other hand, if the jury should find, as claimed by the defendant, that the plaintiff was told by the agent of the company that she must make out her proofs of loss as stated in the policy, and she did not do so, as there is no claim that she did, then she would not be entitled to recover unless the jury further find that the authorized agent of the company, after the retention of the admitted proofs of loss without notice of any alleged defect in such proofs, when payment was demanded, placed the reason for the nonpayment by the company upon entirely distinct and different grounds from the alleged defect in the proofs of loss, and the alleged false statement in the application as to her ownership of the property; if they did so, then the jury might infer a waiver of any other grounds of defence. And while the defendant company might have refused to pay without giving any reason at all, or might have relied upon any number of reasons, yet, having given notice to the assured in refusing to pay this claim, of a particular ground of defence, they cannot set up other defence upon the trial. Upon the testimony of Barbour they claim it was; that was the defence they claim they had, and the reason they based upon their refusal to pay.] [2]

"Neeley was the agent of the plaintiff, and any mistake or fraud, or neglect, of Neeley, through anything of that kind, (if the jury should find there was anything of that kind), any defect in the policy, or that it was not issued as it should have been, through any fault of Neeley, then the defendant here is not to suffer for that, because Neeley was simply the agent of the plaintiff in this transaction.

["As to the power of Barbour to bind the company, in my opinion he was so far a general agent as that the service of notice of loss, as also proofs of loss, and, under the evidence, and what he said with reference to the refusal of the company and the reason given at the time, would be binding upon the company, so that the company would be bound by any neglect of him in the issuing of the policy.] [3]

"The burden of proof is upon the plaintiff. They must satisfy you from the weight of the evidence which you deem credible, that their theory is the correct one, and if there is any difference in the testimony you will reconcile it so it may all stand as true, if you can. If you cannot, say where you will give the credit. If the evidence leaves this case evenly balanced, so that you cannot tell which way to find in it, you will find for the defendant."

Plaintiff's points were as follows:

"1. The interest of the plaintiff in the premises destroyed at the time the insurance was effected, and at the time of the fire, was an insurable one." Affirmed. [18]

"2. As all the evidence shows that the plaintiff caused notice to be given within ten days, at the office of the defendant's agents who countersigned the policy, this was sufficient compliance with the conditions of the policy requiring written notice to the company." Affirmed. [5]

"3. If the proofs and schedules furnished by the plaintiff were defective, it was the duty of the defendant company to return them specifying the defects, and calling for more specific proofs, and their retention of such proofs and schedules without objection, is a fact from which the jury may find a waiver on their part of the requirements of the policy regarding such proofs." Affirmed. [6]

"4. As the authorized agent of defendant denied liability exclusively for other reasons, this was a waiver of preliminary

proofs. *Answer:* This is so, if he specified the reasons, distinctly and squarely specified them, and there are other reasons than that; that point is affirmed." [7]

" 5. If the authorized agents of the defendants refused payment of the loss, giving a specified reason therefor to the plaintiff, they must be confined to that reason upon the trial, and the jury should disregard any other defence now made by them. *Answer:* That is affirmed so far as they would be confined to that now." [8]

" 6. The measure of damages in this case is the value of the property destroyed at the time the loss happened, not exceeding the sum insured, with interest from the date of the fire." Affirmed. [9]

Defendant's points were as follows :

" 1. By the terms of the policy the insured was, in case of loss, required to render a statement to the company within sixty days, signed and sworn to by the insured, stating her knowledge and belief as to the time and origin of the fire, her interest in the property insured, and the cash value of each item thereof, and the amount of loss thereon; and there being no evidence that such statement was furnished by the insured, the plaintiff is not entitled to recover. *Answer:* We would answer that if there was no evidence of a waiver of estoppel, that they were estopped from claiming that. With that qualification the point is affirmed." [10]

" 2. It appearing that the insurance upon the house was based upon an estimate of its full value, and it further appearing from all the evidence that the plaintiff, being upwards of seventy years of age, had only a life estate in the premises, and there being no evidence that her interest as life tenant was insured or intended so to be, the policy of insurance was and is void, in so far as the alleged insurance upon the house is concerned, and the plaintiff is not entitled to recover. *Answer:* That point as made is answered in the negative." [11]

" 3. By effecting this insurance of the house in question at its full value as owner, plaintiff, having at the same time but a life interest therein, she was, by accepting the policy, guilty of concealing a fact material to the risk, and the policy was and is void. *Answer:* We will answer that in the negative as qualified by the charge." [12]

" 4. It being proved by the terms and conditions of the policy that ' if the interest of the insured in the property be not truly stated herein, then the entire policy shall be void ' and it being uncontradicted that the interest of the insured was not truly stated in said policy, to the knowledge of the insured, the policy is void and the plaintiff cannot recover. *Answer :* That is answered in the negative. You will find there are some matters on which we have instructed you in the charge, upon which she might recover if you find those facts." [13]

" 5. If the court declines to charge as above requested, then the court is requested to charge the jury that at most the plaintiff is not entitled to recover more than the value of her life estate or interest in the house insured, together with the amount of insurance upon the personal property named in the policy. *Answer :* That is answered in the negative." [14]

" 6. Under the evidence Barbour and Dunbar were local agents for the purpose of soliciting risks, placing insurance and collecting premiums, and as such they had no power to do any act affecting the policy in suit, after its delivery to the insured. *Answer :* That point as made, with reference to the facts in the case, is answered in the negative." [15]

" 7. There is no evidence that any persons having authority to represent the defendant, said or did anything waiving any of the conditions of the policy in suit, nor to mislead the plaintiff in respect to her obligations under said contract. *Answer :* We submit that question to the jury." [16]

" 8. The plaintiff having brought her suit upon the contract of insurance as made and delivered to her, thereby ratified and confirmed the same and is bound by all its provisions, and it being the uncontradicted evidence that the plaintiff was not the owner of the property as mentioned and described in the policy, and has no right to demand or receive the value of said property, she cannot recover in this action. *Answer :* This point as made is answered in the negative." [17]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (2, 3, 5–18) instructions, quoting portions of charge in brackets and points and answers ; (4) admission of certain evidence, quoting bill of exception but not evidence.

*J. H. Osmer,* for appellant.—The policy contained defendant's understanding of plaintiff's interest to be the absolute ownership in fee. She, by her silence in respect thereto, assured the company that her interest was correctly stated. The minds of the parties never met upon any other basis, and there was no contract between them in reference to any other interest: 1 Addison, Cont. 1.

No adequate proofs of loss were made by plaintiff.

A local agent has no authority to receive the notice or proofs of loss: Edwards v. Lycoming Ins. Co., 75 Pa. 378; Trask v. State F. & M. Co., 29 Pa. 198; Gould v. Dwellinghouse Ins. Co., 134 Pa. 570; May, Ins., § 1.

Plaintiff cannot recover a sum greater than her interest in the property: Louden v. Waddle, 98 Pa. 242.

*John O. McCalmont, Bryant H. Osborne* with him, for appellee.—A life estate is an insurable interest: Louden v. Waddle, 98 Pa. 242.

The insurer can never claim that he was misled where the agent knew the fact: Wood, Fire Ins. 667, 671, 678; Burson v. Fire Asso., 136 Pa. 267; Cooper v. Columbian Ins. Co., 50 Pa. 331; Manhattan Ins. Co. v. Webster, 59 Pa. 227; Eilenberger v. Ins. Co., 89 Pa. 464; Meadowcraft v. Ins. Co., 61 Pa. 91.

The company having refused payment on the ground that the loss was fraudulent, it must be confined to that reason upon the trial: Pipe Lines v. Ins. Co., 145 Pa. 346.

It was the duty of defendant to notify plaintiff of any objection they might have had to her proofs: Ins. Co. v. Bock, 109 Pa. 535; Ins. Co. v. Cusick, 109 Pa. 157; Shoe Co. v. Kittanning Ins. Co., 138 Pa. 73.

The company waived objections, and is now estopped: Leban etc. Ins. Co. v. Erb, 112 Pa. 149; Pa. Ins. Co. v. Dougherty, 102 Pa. 568; Farmers, etc., Ins. Co. v. Ensminger, 12 W. N. 9; McFarland v. Ins. Co., 134 Pa. 590.

Where one has an insurable interest in the property at the time the policy was effected, and also at the time of the loss, she may recover the whole amount of damages done to the property, not exceeding the sum insured: Miltenberger v. Beacom, 9 Pa. 198; Manhattan Ins. Co. v. Webster, 59 Pa. 227.

OPINION BY MR. JUSTICE MITCHELL, Oct. 31, 1892.

Eight of the eighteen assignments of error relate to the notice of the fire and the proofs of loss. As to the notice, Cluff testified that Ray, the adjuster, was sent to the place under instructions from himself or the company, and it is undisputed that Ray was there a week after the fire. This was conclusive evidence of notice to the company.

As to the proofs of loss, although they are conceded to be informal they come plainly within the rule laid down in Gould v. Insurance Co., 134 Pa. 570, 588, and the circumstances under which they were delivered, put upon defendants the duty of notifying the plaintiff of their objections, if the want of form was to be relied upon. The failure to give such notice was evidence for the jury of a waiver. But it is said that the proofs of loss were not sent to the company as required by the policy but left at the office of the local agent, Barbour; and Trask v. Ins. Co., 29 Pa. 198, and Edwards v. Ins. Co., 75 Pa. 378, are relied upon to show that such delivery is not sufficient. In both these cases the policy required the notice to be given "forthwith" and to the company, and it was held that unexcused delays of eleven and eighteen days respectively, were unreasonable and should be so pronounced as matter of law. And in Edwards v. Ins. Co. it was said that the local agent had no authority to receive the notice and was not bound to communicate it to the company. But since these decisions, the act of June 27, 1883, § 1, P. L. 165, has practically given a legislative definition of reasonable time by fixing the period of ten days for notice of the fire and twenty for the proofs of loss, and has settled the question of the agent's authority by enacting that the notice and proofs may be delivered to the company at its general office or to the agent who countersigned the policy. There was evidence to justify submitting these matters to the jury in the way it was done, and the assignments of error relating thereto must be dismissed.

The substantial defence was upon the admitted fact that the insurance was on the full value of the fee in the land, while the plaintiff's interest was only a life estate. Unexplained this was a solid defence on the merits, and the burden of explanation was on the plaintiff. It was testified by Neeley that he wrote the application for insurance for the plaintiff at her re-

quest, and that her interest in the house was correctly stated therein as " a life lease." This application was sent or given by Neeley to Barbour, who by his own testimony had authority to write up the policy by inserting the description of the insured interest in the land, and did so in this case. The application was not produced by defendant, nor was Neeley's testimony as to its contents in any way contradicted. Upon the evidence therefore it was plain that the defendant had issued the policy with knowledge of the actual condition of the title, and the mistake in the description was that of its own agent which it could not set up as a defence : Burson v. Fire Assoc., 136 Pa. 267; Columbia Co. v. Cooper, 50 Pa. 331; Ins. Co. v. Webster, 59 Pa. 227; Meadowcraft v. Ins. Co., 61 Pa. 91; Eilenberger v. Ins. Co., 89 Pa. 464. The learned judge below declined to affirm the defendant's points and to say as matter of law that the policy was void, but submitted the case to the jury with full and explicit instructions as to the presumption in favor of the policy being the precise and definite contract, and the burden of proof resting on the plaintiff. Under the evidence this was the only proper disposition to make of it.

The question of the measure of damages is not free from difficulty, owing to the meagreness of its presentation by both parties. Undoubtedly the general rule that the insured cannot recover more than his actual loss, or the value of his interest, would, without more, limit the recovery of a life tenant as of a lessee, to the value of his unexpired term. See Wood on Fire Ins. 481. But it is equally true that a carrier, or custodian, or agent may insure in his own name, and recover the entire loss, standing as a trustee for all the amount recovered in excess of his interest: Wood on Fire Ins. 617, 632, 1121 and cases cited. In Miltenberger v. Beacom, 9 Pa. 198, it was said, " the contract of assurance, like other contracts, may be effected by the agency of a third person, without the authority of the person to be benefited, if he subsequently recognize it. It is true that to enable the beneficiary to sue upon it directly he must be expressly named." In the present case Neeley testified that there was some talk with plaintiff as to the name in which the insurance should be taken, she saying that some one thought it had better be in the name of the executor or administrator but she thought as she had control of it it had better

be. in her name. This, in connection with the fact that the full premium was paid and the policy issued for the full value of the fee, may fairly be taken to indicate the real intent of the parties to insure the whole for the benefit not only of the plaintiff as life tenant, but also of the remaindermen. The company is in no position to contest this intent, for with notice in the application that the plaintiff was only life tenant, it charged the full premium and issued the policy on the fee. It is in no danger of a second action by the remaindermen, for they are not named in the policy, and on the authority of Miltenberger v. Beacom, they cannot sue directly and a suit through plaintiff would be barred by the present judgment. On the other hand the plaintiff by suing for and recovering on this evidence the full value of the fee, has put herself in the position of trustee for the remaindermen as to the excess of the judgment over the value of her life interest. As the evidence on this branch of the case was entirely uncontradicted the jury would not have been justified in taking any other view of it, and therefore the instructions on the measure of damages, though not so explicit as might be necessary in a contested case, cannot be held erroneous.

There remain to be considered only the seventh and eighth assignments, in regard to the denial of liability for specified reasons, as a waiver of other defences. The only ground upon which such a result can rest is estoppel. No party is required to name all his reasons at once, or any reason at all, and the assignment of one reason for refusal to pay cannot be a waiver of any other existing reason, unless the other is one which could have been remedied or obviated, and the adversary was so far misled or lulled into security by the silence as to such reason that to enforce it now would be unfair or unjust: Ins. Co. v. Brown, 128 Pa. 386. The whole doctrine depends on estoppel, and the essential feature of it is loss or injury to the other party by the act of the party to be estopped. In this respect there is nothing peculiar about actions upon insurance policies. They stand on the same footing as other litigation. But it has been held that preliminary proofs of loss, though essential are in their nature formal, and "a condition precedent not to the undertaking of the insurer, but to the right of action of the insured:" STRONG, J., in Ins. Co. v. Stauffer, 33 Pa.

397. Substantial compliance with the requirements of the policy is therefore all that is necessary, and the jury may infer a waiver from the acts of the parties. The rule on this subject was carefully formulated in Gould v. Ins. Co., 134 Pa. 570, 588, as follows: If the insured in good faith and within the stipulated time, does what he plainly intends as a compliance with the requirements of his policy, good faith equally requires that the company shall promptly notify him of their objections so as to give him the opportunity to obviate them; and mere silence may so mislead him to his disadvantage to suppose the company satisfied, as to be of itself sufficient evidence of waiver by estoppel. The circumstances under which plaintiff herself took the list and estimate to Barbour, were, as already said, sufficient under the above rule, to take the case to the jury on the question of waiver, and therefore the instruction complained of in the seventh assignment was proper. The plaintiff's fifth point, however, that if the authorized agents of the defendants refused payment of the loss, giving a specified reason therefor to the plaintiff, they must be confined to that reason upon the trial, and the jury should disregard any other defence now made by them, was entirely too broad and its affirmance as a general proposition of law would be clear error. It ignores the elements of estoppel, and lays down a rule without reference to conditions essential to its existence and applicability.

The cases cited by appellee do not sustain the proposition in its breadth as put. In Ins. Co. v. Dougherty, 102 Pa. 568, Ins. Co. v. Erb, 112 Pa. 149, and Ins. Co. v. Enseminger, 12 W. N. 9, there was a positive refusal to pay at all, on grounds that the proofs of loss would not have cured, and it was held that the latter were therefore waived; and in Pipe Lines v. Ins. Co., 145 Pa. 346, a like positive refusal to pay was held evidence of a waiver of the period of sixty days allowed by the policy for adjustment and payment of the loss. All of these cases rest upon the substantial element of estoppel, that the defendant having led the plaintiff to suppose that a compliance with the preliminary formalities would be unavailing, could not thereafter set up the want of such preliminaries. Of the soundness of that principle there can be no question.

But it is not fair to the learned court, or to the case, to take

his language apart from the special facts under consideration, and an examination of the record and the assignments of error fails to disclose any defence which the appellant undertook to make, that was improperly shut out by this instruction. While therefore its language was too general, and would not bear application to other circumstances, yet it could not have misled the jury in the present case, and therefore did the appellant no harm.

Judgment affirmed.