# Hess *v.* Hartford Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Proofs of loss—Waiver—Pleading.*

1. Where by the terms of a fire insurance policy the insurance company has the right, not only to have the formal proofs of loss, or statement therein called for, but also the right to demand the production or examination of all books of accounts, bills, invoices and other vouchers,

such rights are separate and distinct and are not inconsistent with, nor repugnant to, each other. It cannot therefore be said that a mere naked insistence on the one can be regarded as, in any sense, a waiver of the other; but if the company exercises the one right in such a manner as to reasonably induce the assured to believe that it would not insist upon the other, it ought not to complain if the assured acts upon the belief and on that account fails to follow strictly the line and letter of the policy. And this should be none the less true where both rights exist for one common object, viz.: the ascertainment of the facts showing a liability on the part of the company, and the cash value of the property destroyed.

2. Where a stock of goods is destroyed by fire and the bills, vouchers and receipts of the owner are also destroyed, if the insurance adjusters, meeting to adjust the loss, invite the assured to their conference, secure from him all of the information to be found in his bank book and stock books which were not burned, and then being unable to agree with him as to amount, require him to procure duplicate bills of all stock purchased by him during a considerable period of time, and then adjourn to meet when such duplicates shall have been secured to complete the adjustment, a finding by the jury that the insurance company has waived the filing of formal proofs of loss will not be disturbed.

3. In an action upon a policy of fire insurance it is not necessary that the plaintiff in order to plead a valid and subsisting contract of insurance should aver in his statement that the defendant had waived the right to demand proof of loss.

4. If there is a waiver on the part of the insurance company by which the assured is relieved of the obligation to file proofs of loss, such waiver is complete and operates upon every provision of the policy affected by the primary one on that subject.

Argued May 5, 1909. Appeal, No. 218, April T., 1908, by defendant, from judgment of C. P. Indiana Co., Sept. T., 1905, No. 131, on verdict for plaintiffs, in case of R. L. Hess and B. M. Smith, trading as the Gipsy Mercantile Company, v. Hartford Fire Insurance Company. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before CRAWFORD, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant presented the following point:

4. The plaintiffs having neglected to set out any waiver in their statements of claims and having claim in their amended

statements that the defendant companies waived that condition in the policies of fire insurance requiring proofs of loss to be filed within sixty days of the date of fire, no evidence of waiver of filing proofs as condition precedent to the action is admissible, and no such evidence having been offered, and the plaintiffs not having filed any proofs at all, these actions are premature, and the verdict should be for. the defendant. *Answer:* This point is refused. [2]

Verdict and judgment for plaintiff for $800. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant, and (2) answer to defendant's point, quoted above.

*W. K. Jennings,* with him *D. C. Jennings* and *J. W. Mack,* for appellants.—The adjusters were without power to bind the company by a waiver: Beddall v. Ins. Co., 28 Pa. Superior Ct. 600; Desilver v. Ins. Co., 38 Pa. 130; Seibel v. Ins. Co., 197 Pa. 106; Langan v. Ins. Co., 162 Pa. 357.

The clause requiring the furnishing of proofs is binding as a condition precedent unless waived: Gould v. Dwelling House Ins. Co., 134 Pa. 570; Hottner v. Ins. Co., 31 Pa. Superior Ct. 461.

*John L. Getty,* with him *M. C. Watson,* for appellees.—The appellants by their action and conduct and request for duplicate bills at the meeting on January 5, 1905, waived that provision in the policies requiring proofs of loss to be filed within sixty days from the time of the fire: McFarland v. Ins. Co., 134 Pa. 590; Mix v. Ins. Co., 169 Pa. 639; Welsh v. London Assurance Corporation, 151 Pa. 607; Penna. Fire Ins. Co. v. Dougherty, 102 Pa. 568; Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149; Snowden v. Ins. Co., 122 Pa. 502; Niagara Fire Ins. Co. v. Miller, 120 Pa. 504; Hottner v. Fire Ins. Co., 31 Pa. Superior Ct. 463; Coleman v. Insurance Co., 177 Pa. 239; Bonnert v. Pa. Ins. Co., 129 Pa. 558; Carey v. Allemania Fire Ins. Co., 171 Pa. 204.

The plaintiffs were not precluded by the pleadings from offering evidence of waiver of filing proofs as conditions precedent to the action: Lebanon Mut. Ins. Co. v. Erb, 112 Pa. 149.

OPINION BY HEAD, J., February 26, 1909:

The plaintiffs, who were engaged in the mercantile business, had insured their stock of goods in a number of insurance companies. All of the policies, which were of standard form, were issued by the local agency of S. F. Clark & Company, at Glen Campbell, Pa. A fire occurred on the night of December 29, 1904, which destroyed the stock of goods insured and burned up the bills and other papers kept on file in the store. The books of the firm which were in a fireproof safe were not injured. Notice of the fire was promptly given by the plaintiffs to the local agents and by them to the companies. In response to the notice the adjusters of the different companies met at Glen Campbell on January 5, 1905. The plaintiffs were summoned to the conference and, upon request, produced their store books, bank books and all papers and memoranda in their possession that would aid in the ascertainment of the amount of stock in the store at the time of the fire and the adjustment of the loss resulting therefrom. After securing all of the information that could be furnished by the insured and making a lengthy investigation of all of the data before them, the adjusters announced the result of their work, according to the testimony of their local agent, Mr. Clark, as follows: "They called Mr. Hess then and Mr. Wright said to him that they had gone over the matter very carefully and could not find that he had the amount of loss there which the insurance gave; however, they did not want to make him any mean offer, but said they could not find that there was more than $3,500, I believe, or $4,000 of a loss from the data he had furnished them. Mr. Hess said he had more loss than that. They said they could not see it. They said that they saw there was only one way to adjust the thing and that would be for him to write to all the houses they dealt with and obtain a complete statement, showing all debits and all credits from the date of their consolidation up to the time of the fire." After some discussion as to the labor and difficulty of securing a complete set of duplicate bills and the time that would be consumed, the witness goes on: "Then they told Mr. Hess to notify S. F. Clark & Company as soon as he got this information, but not to notify them or bother them anything about it until he got this in-

formation and was ready to settle with them and then to notify us and we would arrange a meeting at Altoona. . . . Q. Then they were to meet at Altoona? A. Yes, sir. Q. For what purpose? A. To adjust this loss."

When early in March the plaintiffs had succeeded in obtaining the required bills and gave notice of their readiness to meet and finish the adjustment, as agreed on, the adjusters declined to proceed further claiming the liability of the companies had been extinguished by the failure of the insured to file, within sixty days after the fire, the formal written proofs of loss required by the policies. Suit was then brought. Upon the trial the learned court submitted to the jury the testimony above quoted, with more of like import produced by the plaintiffs, permitting them to find therefrom that the defendant company had waived a strict compliance with the provision of the policy requiring formal proofs of loss, and by the conduct of its adjuster, had misled the plaintiffs into the belief they were doing all that could or would be demanded of them in promoting an amicable adjustment of the loss. The submission of this testimony and the refusal of the court to affirm a point for binding instructions constitute the first assignment of error.

By the very terms of the policy the insurance company had the right not only to have the formal proofs of loss or statement therein called for, but also the right to demand the production, for examination, of all books of account, bills, invoices and other vouchers. These rights were separate and distinct; they were not inconsistent with or repugnant to each other. It cannot, therefore, be said that a mere naked insistence on the one could be regarded as, in any sense, a waiver of the other. But it must also be conceded that if the company should exercise the one right in such a manner as to reasonably induce the assured to believe it would not insist upon the other, it ought not to complain if they acted upon the belief and on that account failed to follow strictly the line and letter of the policy. And this should be none the less true where both rights exist for one common object, viz.: the ascertainment of the facts showing a liability on the part of the company, and the cash value of the property destroyed.

The proofs of loss contemplated by the policy are, in substance, but a detailed, ex parte statement by the assured of these facts, so far as they are within his knowledge. Upon the receipt of the preliminary notice of a fire and the consequent knowledge that a claim against it exists, an insurance company may, if it choose, await the receipt of the formal claim of the assured as provided for in the policy. Until then it is under no obligation to do anything. It is not required to take the initiative.

But it certainly may, as insurance companies so often and so laudably do, promptly undertake to ascertain for itself the character and extent of the loss, with the object in view of making the insurance money an indemnity in fact as well as name. An experienced adjuster can easily and quickly learn, in a personal examination of the assured, all of value the company could get from the more formal but still ex parte statement of the latter: The information thus obtained can be either weakened or strengthened by an examination of the books, papers, vouchers, etc., in the possession of the assured. Thus the company is in a position to secure for itself, in a rapid and informal way, all that the more technical provisions of the policy were intended to bring to it if it chose to stand aloof and assume an adversary attitude towards the assured.

In determining the character and legal consequences of the line of conduct pursued by the special adjuster of the company in this case, we have but to apply to the facts before us the principles enunciated in Snowden v. Ins. Co., 122 Pa. 502; Gould v. Ins. Co., 134 Pa. 570, and McFarland v. Ins. Co., 134 Pa. 590.

When the plaintiffs were summoned to the conference of the adjusters at Glen Campbell and asked to disclose such information as they had concerning the fire; when they were further requested to there produce their store books, bank books, etc., and when the production of these was followed by a lengthy investigation of what they showed as to the probable value of the stock of goods on hand; and when, at the end of the investigation, the adjusters announced that, from the data before them, they were unable to find that the loss had exceeded $4,000, were

the plaintiffs, as reasonable men, unwarranted in assuming that the object of the entire proceeding was, in good faith, to ascertain the extent of the loss with a view to its payment?

Had the conclusion there reached by the adjusters been accepted by the assured, is there any reason in this record to doubt that the adjustment of the loss would have been completed on the spot? Was it not fairly apparent that the only obstacle in the way of the speedy adjustment both parties seemed to desire, was the extent of the claim made by the assured? When the companies' officers further declared that the adjustment could not proceed until the plaintiffs would obtain duplicate copies of the bills of all goods purchased by them during the eleven months of their business, but that when such bills had been procured and the plaintiffs were thus "ready to settle," they would, on notice, meet in Altoona, "to adjust this loss;" again, were not the plaintiffs justified, as reasonable men, in assuming that when they had expended the time and energy necessary to do all that seemed to be required, they would not then be met with their failure to have done something else, the necessity for which appeared to have ceased to exist?

These are not questions of law to be answered by a court, but of fact to be submitted to a jury. The testimony of the plaintiffs on these questions was fairly submitted to the jury, and, although not by any means uncontradicted, was accepted by them. The resulting conclusion, that the defendant had waived its right to insist upon the filing of formal proofs of loss, seems to us to rest upon the same solid foundation as in the cases cited. As was said in Roe v. Ins. Co., 149 Pa. 94, followed in Hower v. Ins. Co., 9 Pa. Superior Ct. 153, "As a rule, the law does not require vain things, and technical proofs could but restate that of which the company was already informed." And it may not be inappropriate to here quote the following language from the opinion of Chief Justice STERRETT in McCormick v. Ins. Co., 163 Pa. 184: "Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire frankness and fairness. They may refuse to pay, without specifying any ground, and insist upon any available ground, but when they plant themselves upon a specific

defense, and so notify the assured, they should not be permitted to retract after the latter has acted upon their position as announced, and incurred expenses in consequence of it."

We are therefore unable to say the court was in error in refusing binding instructions and the first assignment of error must be dismissed.

The second assignment raises the question that the plaintiffs could not recover because their statement contained no averment that the company had waived its right to demand proofs of loss, and hence no testimony on that subject could properly be offered. The pleadings are not printed in the paper-book and we have had no opportunity to examine them.

The plaintiffs sued on the contract of insurance evidenced by the policy. The requirement that proofs of loss be filed was no part of that primary contract. "Proofs of loss are acts to be done by the assured for the information of the insurer, and the stipulation for them, as said by Strong, J., in Inland Ins., etc., Co. v. Stauffer, 33 Pa. 397, is, 'at most a condition precedent, not to the undertaking of the insurer, but to the right of action of the insured:' " Gould v. Ins. Co., 134 Pa. 570. It was not necessary therefore that the plaintiffs, in order to plead a valid and subsisting contract of insurance, should aver, in their statement, that the defendant had waived the right to demand proofs of loss. If the company undertook to defend on that ground, the averment of a waiver would properly come by way of replication. If, however, the averment appeared in the amended statement, then the order in which proof would be admitted became a question within the discretion of the trial court. The jury having found, from evidence sufficient to sustain such finding, that the company had waived its right under the provision of the policy requiring proofs of loss, that provision practically disappeared from the contract, and other provisions would necessarily be construed as if the first had never been any part of the contract. In other words, if there was a waiver by which the assured were relieved from the obligation to file proofs of loss at all, that waiver was complete and operated upon every provision of the policy affected by the primary one on that subject: Lebanon Mutual Ins. Co. v. Erb, 112 Pa. 149. The learned

court was therefore right in refusing the point and this assignment is dismissed.

The only remaining assignment applies exclusively to the case against The Hanover Fire Insurance Company, argued with the one now before us, and we will dispose of it in a separate opinion.

Judgment affirmed.