# Kompa *v.* Franklin Fire Insurance Company, Appellant.

*Insurance—Fire insurance—Sole ownership—Change of title—Forfeiture
—Estoppel—Agent.*

Where a policy of fire insurance provides that the ownership of the in-
sured shall be sole and unconditional, and that any change of ownership,
except the death of the insured, shall void the policy, a conveyance by
the insured of the property to his wife through a third person without the
knowledge or consent of the insurance company or its duly authorized
agent renders the policy void.

In an action upon a policy of fire insurance it appeared that the insured
knowing that a change of title should be noted upon the policy, went to
the office of a local agent of the company, and there talked with two clerks
employed by the local agent who told him that the policy was in the pos-
session of a third person. The insured went to this person for the purpose
of getting the policy, but the latter declined to let him have it. He went
back and reported this fact to the two clerks, "and then they said they
were going to fix it all right, it will be all right." The clerks did nothing,
however, and the property was subsequently destroyed by fire. There was
no evidence that the clerks had any authority from the company, or from

426  KOMPA v. FRANKLIN FIRE INS. CO., Appellant.

their immediate employer to waive the condition of the policy. There was also no evidence that either the company or the agent had had any knowledge whatever of the change of title. *Held,* that the evidence was insufficient to establish a waiver of the forfeiture.

Argued Jan. 11, 1905. Appeal, No. 21, Jan. T., 1905, by plaintiff, from judgment of C. P. Luzerne Co., Dec. T., 1899, No. 467, on verdict for plaintiff in case of Anthony Kompa v. Franklin Fire Insurance Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit on a policy of fire insurance.

The facts are stated in the opinion of the Superior Court.

Defendant presented this point:

2. There can be no recovery at all because by the uncontradicted testimony there was a change of title, contrary to the expressed condition of the policy, and there is no testimony which overcomes that condition or validates the policy after the said change of title." *Answer:* This point is denied. [3].

Verdict and judgment for plaintiff $1,029.60. Defendant appealed.

*Error assigned* was (3) above instruction, quoting it.

*Henry A. Fuller,* with him *Paul Bedford,* for appellant.—A conveyance from husband to wife constitutes such change in title as will avoid a policy containing a provision of this character. This proposition is sustained either directly or indirectly by the following authorities: Walton v. Agricultural Insurance Company, 116 N. Y. 317 (22 N. E. Repr. 443); Oakes v. Manufacturers' Ins. Co., 131 Mass. 164; Glaze v. Insurance Co., 87 Mich. 349 (49 N. W. Repr. 595); Baldwin v. Insurance Co., 60 N. H. 164; Ohio Farmers' Insurance Co., v. Waters, 65 Ohio, 157 (61 N. E. Repr. 711); Bemis v. Insurance Co., 200 Pa. 340; Buckley v. Garrett et al., 47 Pa. 204; Finley v. Insurance Co., 30 Pa. 311; Dornblaser v. Insurance Co., 20 Pa. Superior Ct. 536; Gillon v. Northern Assurance Co., 127 Cal. 480 (59 Pac. Repr. 901); Southern Bldg. & Loan Assn. v. Penn. Fire Ins. Co., 23 Pa. Superior Ct. 88.

The alleged interview with the alleged agent is likewise immaterial to affect the result or obviate the avoidance, because (1) the policy was then void, a result which could be overcome only by a new contract, waiver or estoppel; (2) there could not be a new contract, waiver or estoppel except through an agent of the company acting with the scope of express or apparent authority; (3) in the present case no express authority was shown, and authority was expressly limited by the stipulation in the policy, known to the plaintiff, requiring indorsement: Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475; Wachter v. Phoenix Assurance Co., 132 Pa. 428; Light v. Countrymen's Mut. Fire Ins. Co., 169 Pa. 310; Highlands v. Fire Ins. Co., 177 Pa. 566.

*Quincy A. Gates*, with him *Jas. R. Scouton*, for appellee.— A husband, as tenant by the courtesy of the real estate of his wife, may effect a valid insurance thereon, in his own name: Harris v. York Mut. Ins. Co., 50 Pa. 341; Zehring's Est., 4 Pa. Superior Ct. 243.

If there was a technical change of title or interest in the property insured, the insurance company had notice of the change and agreed both expressly by positive agreement, and tacitly by returning the premium to the continuance of the policy, and are thereby estopped from now asserting to the contrary and declaring the policy void: Harris v. Ins. Co., 50 Pa. 341.

When a policy has become void, by breach of any of its conditions, it may be revived and set on foot again as an operative instrument, by an act from which the consent of the insurer may be fairly implied: Sherman v. Niagara Fire Ins. Co., 46 N. Y. 526; Welsh v. London Assurance Corporation, 151 Pa. 607; Western, etc., Pipe Lines v. Home Ins. Co., 145 Pa. 346; Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460; Gould v. Ins. Co., 134 Pa. 570; McGonigle v. Ins. Co., 168 Pa. 1; Elkins v. Ins. Co., 113 Pa. 386; Thierolf v. Ins. Co., 110 Pa. 37; Bonnert v. Ins. Co., 129 Pa. 558; McCormick v. Ins. Co., 163 Pa. 184; Kronk v. Ins. Co., 91 Pa. 300; Mix v. Royal Ins. Co., 169 Pa. 639.

OPINION BY PORTER, J., July 13, 1905:

This action was brought upon a policy of insurance issued

by The Franklin Fire Insurance Company, of Philadelphia, through the office of its local agent at Wilkes-Barre, dated September 9, 1896, to Anthony Kompa, the plaintiff. The policy contained the following provisions material to the consideration of the questions presented by the record : " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void .... if the interest of the insured be other than unconditional and sole ownership ; or if the subject of insurance be a building on ground not owned by the insured in fee simple ; .... or if any change, other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise." The policy contained a stipulation that it should not be valid until countersigned by the duly authorized agent of the company at Wilkes-Barre, Pa., and was countersigned, at Wilkes-Barre, Pa., on the day of its date, by Thompson Derr & Bro., as such agents. The fact that Thompson Derr & Bro. so countersigned the policy was the only evidence of their authority to represent the company, and the character and extent of their agency. The building was damaged by fire on January 29, 1899, the defendant company denied liability and the plaintiff brought this action.

The facts developed by the testimony at the trial lie within a very narrow compass. Kompa was, at the date of the policy, the unconditional and sole owner of the building and held by a title in fee simple the ground on which it was erected ; about a year after the contract of insurance had been in existence, Kompa and his wife, by a deed dated and acknowledged October 18, 1897, conveyed the property in fee simple to John Gebinski, who four days later, by deed dated and acknowledged October 22, 1897, conveyed to Annie Kompa, the wife of the plaintiff. No agreement or memorandum, referring to this change of interest in or title to the subject of insurance was indorsed upon the policy. The consideration mentioned in each of the deeds was $5.00 and Kompa testified that no consideration money was paid. That is the only testimony, apart from what appears upon the face of the deeds, which tends to throw any light upon why the conveyances were exe-

cuted.   The assertion, in the counter-statement of the appellee, that it was the intention to have both deeds bear the same date and be executed at the same time and the explanation as to why this was not done, is without the slightest foundation in the evidence.

The contention of the appellee, that there was not, previous to the loss, any change of interest, title or possession within the meaning of the policy sufficient to invalidate it, cannot be sustained.   Kompa was, at the time the policy was issued, the absolute owner of the property and the policy was valid according to its terms.   Had the title at that time been in his wife, as it was at the time of the loss, the policy would, from the day it was written, have failed to bind the company, for the interest of the insured would then have been " other than unconditional and sole ownership; " for which the policy stipulated : Swan v. Watertown Fire Insurance Co., 96 Pa. 37; Diffenbaugh v. Union Fire Insurance Co., 150 Pa. 270 ; Schroedel v. Humboldt Fire Insurance Co., 158 Pa. 459.   There had been a change of interest in and title to the property, within the meaning of the contract, and the plaintiff was not entitled to recover unless he established that the policy had been continued by agreement indorsed thereon, or that the company had waived that condition, or proved facts which would estop the company from asserting this defense : Dornblaser v. Mutual Fire Insurance Co., 20 Pa. Superior Ct. 536 ; Bemis v. Harborcreek Mut. Fire Insurance Co., 200 Pa. 340 ; Finley v. Insurance Co., 30 Pa. 311 ; Buckley v. Garrett, 47 Pa. 204.   It was a fundamental condition of the contract that alienation of the property rendered void the policy, but incorporated in the terms of this condition was the provision that by an agreement indorsed upon the policy it might be confirmed and continued to cover the changed ownership.   This regulation was a reasonable and proper one, for otherwise the company would be obliged to insure parties without any knowledge of them, or the title under which they held.   The failure of the plaintiff to have the change of title noted upon the policy was fatal to his claim, unless there be something else in the case to avert such a result.

The appellee attempted to show that the defendant company had waived this condition of the policy, or was estopped

to assert it. The plaintiff testified that after the deed from Gebinski to Annie Kompa was delivered, on October 22, 1897, he, by advice of his counsel, took that deed and the one by which he had conveyed the property to Gebinski, and went to the office of Thompson Derr and there talked to Charles Ayres, a clerk in the office, from whom he had originally received his policy; that he told the clerk, Ayres, that he had conveyed that property to his wife and wanted to have the policy fixed "in my name," (his own name); that Ayres said "All right, we have not got the policy here, Powell has got it." Powell was the attorney for Ella G. Turner, a mortgagee, to whom any loss arising under the policy had been made payable, as her interest might appear. The interest of the mortgagee in the policy subsequently became extinguished. The plaintiff testified that he went to Powell and asked about the policy, that Powell said, "If you pay the mortgage I will give up the policy;" that he then went back to the office and told them about it, "and then they said they were going to fix it all right, it will be all right." "Then I held that way until the fire occurred." He testified that his conversation was with Charles Ayres and another clerk whose name he did not know. He further testified, "I found Mr. Shoemaker there, too, at the same time; he was outside boss." He did not say that any of his conversation was with or in the hearing of Shoemaker, nor did he say of what Mr. Shoemaker was outside boss. There was nothing in his testimony from which a jury ought to have been permitted to infer that Mr. Shoemaker had any connection with the Franklin Fire Insurance Company of Philadelphia. This was the entire testimony in support of the attempt to establish that the defendant company had waived or was estopped to assert the conditions of the policy. There was no evidence that these clerks were known to the defendant company or that any act of theirs had ever been ratified by it. Assuming that Charles Ayres was the identical clerk who, at the office of the local agent, had originally handed the policy to the plaintiff; that establishes nothing more than that he was a clerk employed by the local agent, and not that he was acting as either the general or special agent of the defendant company. The plaintiff did it is true testify that he saw Ayres and the other clerk looking around his place after the fire,

but he did not pretend to say that they were there acting for the company, they were simply there looking around, it may have been from curiosity. The suggestion of the appellee that the return of the summons in this case establishes that Mr. Shoemaker was a member of the firm of Thompson Derr & Bro., is hardly to be seriously considered; that return was not offered in evidence, there was no evidence that the " Will Shoemaker," named in the return was the same Shoemaker referred to by the witness Kompa; and the writ was not served until two years after the date of the alleged conversation with the clerks. The sum of the evidence which was held sufficient to estop the defendant company from asserting the covenants of its contracts, amounts to this : The plaintiff, knowing that the change of title should be noted upon the policy, went to the office of the local agent of the defendant company and there talked to two clerks employed by the local agent, they told him that the policy was in possession of Powell; he went to Powell for the purpose of getting the policy, but the latter declined to let him have it; he went back and reported this fact to the two clerks, " and then they said they were going to fix it all right, it will be all right."

Ought the question of the liability of the defendant to have been submitted to the jury upon the evidence presented ? Thompson Derr & Brother were the agents at Wilkes-Barre, of the defendant company. There was no evidence tending to show that their powers were special. It must be assumed then that they were authorized to act as general agents of the company in all matters relating to the policies issued by them for the company. This policy expressly provided for the contingency of a change of the title and for a transfer of the policy, by an indorsement thereon of the consent of the company to the transfer. Derr & Brother were authorized to give the consent of the company to the transfer, or to continue the liability of the company under the changed ownership, in the manner which the contract provided, by an agreement indorsed upon the policy. They had not, however, as such general agents the power to waive the express condition of the contract. The policy had by its terms become forfeited and the company was discharged from liability, by the change of title

without the assent of the company, when the plaintiff went to the office of Derr & Brother and had the interview with the clerk. When an insurance company is, under the provisions of the policy, discharged from liability, responsibility for the loss will not reattach by waiver without proof of authority in the party whose act of waiver is relied upon : Mentz v. Lancaster Fire Insurance Co., 79 Pa. 475 ; Imperial Fire Insurance Co. v. Dunham, 117 Pa. 460 ; Gould v. Insurance Co., 134 Pa. 570; Trask v. Insurance Co., 29 Pa. 198; Pottsville Natural Fire Insurance Co. v. Improvement Co., 100 Pa. 137. Derr & Brother, having been authorized by the contract to give the assent of the company to a change of ownership, by an agreement indorsed upon the policy, might have bound the company by an agreement so indorsed after the change of title had actually taken place, for being authorized to consent to it in advance they might have approved it after it had been made: Imperial Fire Insurance Co. v. Dunham, 117 Pa. 460· This however was not done. While Derr & Brother were without authority to waive the express covenant of the policy, as they were authorized to bind the company by an indorsement on the policy, had they represented to the plaintiff that the condition had actually been complied with, and so mislead him, the company would have been estopped from controverting that fact: Mentz v. Insurance Co., 79 Pa. 475 ; Gould v. Insurance Co., 134 Pa. 570; Wachter v. Assurance Co., 132 Pa. 428 ; Light v. Mutual Fire Insurance Co., 169 Pa. 310 ; Highlands v. Fire Insurance Co., 177 Pa. 566. These authorities make it very clear that the evidence produced by the plaintiff was insufficient to establish a waiver of the condition of the policy by any person having authority to waive the rights of the defendant company.

The evidence was equally insufficient to constitute an estoppel. Even if every clerk, cashier and messenger in the office of a local insurance agent is to be considered as a general agent of every insurance company which his employer represents, this evidence would not have warranted a finding that Ayres had made any misrepresentation as to an existing fact. The testimony would not have warranted a finding of more than the declaration upon the part of Ayres that he was " going to fix it all right," neither Ayres nor his employer were

authorized to waive the condition of the policy, and the promise of Ayres can only be viewed as an undertaking upon his part to do something in the future. The plaintiff knew the requirement of this policy, and there is no evidence that any person ever made any representation to him that the condition had been complied with. He knew that it had not been complied with when he separated from Ayres, upon whose promise to do something in the future he relied. The plaintiff paid nothing to the company after this alleged interview, nor is it pretended that he had any further communication with the company or any of its agents, until after the fire. The argument of the learned counsel for the appellee, that the company must be held to be estopped because it did not return the unearned premium, is answered by the provision of the policy, which only required repayment of the unearned premium "on surrender of this policy." "No one is held to have waived his rights, until it be shown that he has done so with a knowledge of them, or where it was his bounden duty to know them. It was the expressed duty of the purchaser of the insured property to give notice to the company, and have the policy assigned according to its conditions, if he wished it continued for his use:" Finley v. Insurance Co., 30 Pa. 311. We are, however, clearly of the opinion that there was nothing in the evidence presented to the court below from which a jury ought to have been permitted to find that either Ayres or his fellow-clerk, in the office of Derr & Brother, were authorized upon the part of the defendant company to waive any condition of this policy, or that they stood in such a relation to the company that their declarations and undertakings could operate as an estoppel. There was no evidence as to the relation in which the clerks stood to their immediate employers, Derr & Brother, they may have been mere scriveners, cashiers or messengers. There was no evidence that the defendant company or Derr & Brother had ever ratified any act in which either of these clerks had undertaken to act as the agent of this company. The contention of the appellee, that every clerk in the office of a local insurance agent, is invested with all the powers of a general agent of every company which his employer represents, is not sustained by the decision in McGonigle v. Insurance Co., 168 Pa. 1, upon which he re-

lies. There was in that case an express finding of fact by the referee, presumably upon sufficient evidence that the agent of the company had adopted the act of his employee as his own. It certainly cannot be contended that every employee is authorized to bind, even his immediate employer, in all things, without regard to the terms and scope of his employment. There was no evidence that these clerks were employed to perform other than mere clerical duties, nor that they had ever on any other occasion negotiated any contract of insurance on behalf of their employer.

The defendant company was entitled to an unqualified affirmance of its second point, requesting binding instructions, and the third specification of error is sustained.

The judgment is reversed.