## Murphy *v.* Prudential Insurance Company, Appellant.

*Insurance — Life insurance — Forfeiture — Nonpayment of premiums — Waiver.*

Where a policy of life insurance has become forfeited by its own terms, by reason of nonpayment of premiums, the insured cannot claim a waiver of the forfeiture by proof of an agreement with an agent of the company that premiums need not be paid during the pendency of a strike, where there is no evidence that the agent had authority to make such an agreement, or that the company ratified it, if made.

Argued Jan. 12, 1906. Appeal, No. 41, Jan. T., 1906, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1903, No. 508, on verdict for plaintiff in case of James Murphy v. Prudential Insurance Company of America. Before RICE, P. J., PORTER, MORRISON, HENDERSON, ORLADY, BEAVER and HEAD, JJ. Reversed.

Assumpsit on a policy of life insurance. Before EDWARDS, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Now the policy being in this condition, the premiums not having been paid according to the terms of the policy, the real question in the case then is this,—did the company do something which now prevents them from defending against this suit on this point or on this ground? That is the contention of the plaintiff in this case. It is in substance that Mrs. Murphy, acting for her husband, paid a visit to Mr. Schubert, the district superintendent of the Prudential Insurance Company of America in this district, in July, 1902; that she informed him that the strike was on or was pending, and that she would be unable to pay the premiums, asking what should be done ; and then Mr. Schubert, according to her testimony, told her that during the pendency of the strike the company had decided to suspend the rules requiring the payment of the premiums, and that the premiums might be paid after the expiration of the strike, and that he had sent a man around to inform the policy holders of that fact, and that if the person insured should die

in the meanwhile that the unpaid premiums, the accrued premiums, should be deducted from the amount payable upon the death of the insured, and that those unpaid premiums should be a lien upon the policy.  That is, in substance, the claim of the plaintiff in this case as to his right to recover on the policy which, according to its own terms, had lapsed.  This is what is known in law as the doctrine of estoppel.  The doctrine of estoppel is based upon good conscience, upon equity, upon common justice.  If this company through its agent told Mrs. Murphy, who was acting for her husband, that she need not pay the premiums during the strike, and made the promise which she has testified that Mr. Schubert made to her, then the company would be estopped from coming into court and denying the right of the plaintiff to recover.] [1]

[It is not considered good conscience, it is not considered good morals in law to permit a company through its agent to mislead a party with whom it has insurable relations and to lull them, according to the term used in the books, into fancied security, thinking that everything is all right, whereas if the agent had said no, it cannot be done, you must pay your premiums promptly, then the party insured could go and borrow the money and pay the premiums.  I am giving you the side of the plaintiff now in this case, and I say to you that if the promise was made by Mr. Schubert in the manner testified to by Mrs. Murphy and by her son, Anthony Murphy, then the company is estopped from defending on the ground that the McNamara policy had lapsed.] [2]

Verdict and judgment for plaintiff for $581.25.  Defendant appealed.

*Errors assigned* were (1, 2) above instructions, quoting them; (4) refusal of binding instructions for defendant.

*A. A. Vosburg*, with him *Chas. W. Dawson*, for appellant.— The insured has no legal or moral right to ask that he get his insurance for nothing; hence the company is not estopped from forfeiting a policy for nonpayment of premiums, even though an agent had stated that there would be no such forfeiture : Ins. Co. v. Conover, 98 Pa. 384; Elsner v. Prudential Ins. Co., 34 N. Y. Supp. 246; Greene v. Ins. Co., 91 Pa. 387; McIntyre

v. Ins. Co., 52 Mich. 188 (17 N. W. Repr. 781); Tate v. Ins. Co., 79 Mass. 79; Bartholomew v. Ins. Co., 25 Iowa, 507; Hoffman v. Ins. Co., 92 U. S. 164; Lantz v. Ins. Co., 139 Pa. 546; Thompson v. Ins. Co., 104 U. S. 252; Sydnor v. Ins. Co., 26 Pa. Superior Ct. 521; Hood v. Ins. Co., 26 Pa. Superior Ct. 527.

*Clarence Balentine*, with him *Charles Connell*, for appellee. —There was a waiver of the forfeiture : Wachter v. Assurance Co., 132 Pa. 428; Light v. Ins. Co., 169 Pa. 310; Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475; Walsh v. Ins. Co., 2 Lacka. Leg. News, 125; Dean v. Ins. Co., 62 N. Y. 642; Homer v. Ins. Co., 67 N. Y. 478; Tennant v. Ins. Co., 31 Fed. Repr. 322; Ins. Co. v. Norton, 96 U. S. 234; McGonigle v. Ins. Co., 168 Pa. 1.

OPINION BY MORRISON, J., April 23, 1906 :

This is an action of assumpsit on an insurance policy, issued by the defendant on the life of Patrick McNamara, and the plaintiff having recovered a judgment the defendant appealed.

After the death of McNamara the plaintiff, Murphy, brought this action, claiming to be the assignee of said policy for a valuable consideration. Upon this point we think there was sufficient evidence to warrant a finding that the plaintiff was entitled to recover, if the policy was in force at the date of the death of McNamara.

By the terms of the policy the assured was required to pay a weekly premium of seventy-one cents, and it is conceded that the last payment only continued the policy in force until June 30, 1902. The assured died January 2, 1903, and, therefore, when the plaintiff made his claim for the insurance the policy had been forfeited, according to its terms, for more than six months. It is conceded that no premium was paid from June, 1902, until December following, when an attempt was made to pay premium on the policy, but it was never accepted by the company. The policy contains upon its face, in printing, the following : " This policy shall be void . . . . if the said weekly premium shall not be paid according to the terms hereof. . . . If for any cause this policy be or become void, all

premiums paid thereon shall be forfeited to the company, except as provided on the back of this policy."

" 6. The weekly premiums stated in said schedule shall be paid to an authorized agent of the company on or before every Monday during the continuance of this contract, and no payment shall be considered binding upon the company unless entered by the agent at the time of the payment in the premium receipt book belonging with this policy."

" 8. If for any reason the premium is not collected by the agent when due, it shall be the duty of the policy holder, before the said premium shall be in arrears four weeks, to bring or send said premium to the home office, or to the company's agent."

" 10. Agents are not authorized to make, alter or discharge contracts, or waive forfeitures, or receive premiums on policies in arrears beyond the time allowed by the regulations of the company, which in no case shall exceed four weeks."

This policy was by the plain terms upon its face, and the conceded fact that no premiums had been paid for about six months, lapsed, forfeited and void, unless the plaintiff could show a state of facts establishing a waiver of the default by the company, or that it was estopped from defending, because of the nonpayment of the premiums.

To avoid the apparent forfeiture of the policy by reason of the nonpayment of the premiums, the plaintiff set up, in substance, that his wife, acting for him, visited Mr. Schubert, called the district superintendent of the defendant company, prior to the date when the next premium would fall due after June, 1902 ; that she informed him that the strike was pending and that they would be unable to pay the premiums, asking what should be done ; that Mr. Schubert told her that during the pendency of the strike the company had decided to suspend the rules requiring the payment of the premiums, and that the premiums might be paid after the expiration of the strike ; that if the person insured should die in the meantime, the unpaid premiums should be deducted from the amount payable at the death of the insured, and those unpaid premiums should be a lien upon the policy. This, in substance, is the ground on which the plaintiff claims to recover on a policy which, according to its own terms, had lapsed.

It is upon this alleged state of facts that the plaintiff contends for the doctrine of estoppel and waiver as against the defendant. It clearly appears that Mr. Schubert, Mr. Griswold and Mr. Haggerty were agents of the defendant company in the Scranton district, and that the defendant corporation had its home office in Newark, N. J. The scope of the power of these local agents is not presumed to extend beyond the soliciting of insurance and the collection of premiums and the business necessarily incident thereto. It must be conceded that the plaintiff furnished sufficient evidence to carry the question to the jury upon which he relied to save the forfeiture of the policy, provided proof of the statements of the agents was sufficient, without more, to bind the defendant company.

While the plaintiff sustained his contention by the testimony of his wife and son, the defendant positively proved by the testimony of Schubert and his two assistants that no agreement or promise was ever made by any of them to Mrs. Murphy or to anyone else, that the premiums need not be paid during the strike. Moreover, the agents went further, and specifically denied that they had any authority to enter into any such agreement. Now right here is where we think the learned court fell into error as alleged in the first and second assignments.

In the face of the plain terms of the policy above quoted, we think it was manifest error for the learned court to instruct the jury, in substance, that if Mr. Schubert made the promise relied on by the plaintiff, and testified to by Mrs. Murphy and her son, then the company is estopped from defending on the ground that the McNamara policy had lapsed. In our opinion, the burden rested on the plaintiff to go one step farther and satisfy the jury, by competent evidence, that the local agents at Scranton had authority to suspend the payment of premiums and still keep the policy in force. Upon this question we have carefully read the entire record without discovering a scintilla of evidence that these agents had any such precedent authority, and the record is just as barren of evidence that the company ratified such arrangement, if it was made.

In our opinion, under the facts and the law applicable thereto, the first, second and fourth assignments of error must be sustained. This conclusion will relieve us from discussing the remaining eleven assignments.

We are unable to understand, in view of the express terms of the policy, how the company can be held to have waived the payment of premiums or be estopped from defending on that ground in the absence of any evidence of authority in Schubert, or either of his assistants, to enter into the agreement upon which the plaintiff relies. If there was no authority in the agents to make such agreement, and the fact that it was made was never communicated to any officer or agent of the company having authority to make or ratify such an agreement, it becomes very clear that the alleged waiver and estoppel must fail.

Where an agent acts outside of the scope of his authority the company is not bound without ratification : Greene v. Lycoming Fire Insurance Co., 91 Pa. 387.

In Waynesboro Mutual Fire Insurance Company v. Conover, 98 Pa. 384, the policy provided that no suit should be maintained thereon unless brought within six months after a loss had occurred. The action was not brought for two years after the loss, and the plaintiff relied upon the promise of a general agent of the company that it was unnecessary to sue within the six months. Held, that such promise or statement by the agent did not constitute a waiver, and the judgment of the court below in favor of the plaintiff was reversed.

In Lantz v. Insurance Co., 139 Pa. 546, it was in substance held : Where there was a provision in a policy that the acceptance of a premium after maturity should not constitute a waiver, the company having a general agent who frequently received, and had authority to receive, premiums after maturity, a promise upon the part of this agent, without new consideration, is not binding upon the company.

In Hoffman v. John Hancock Mutual Life Insurance Co., 92 U. S. 161, it is said in the syllabus : " It is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. The taking of a horse, by an agent of a life insurance company, to pay the premium of a policy, was ultra vires and a fraud as respects the company. No valid contract as to the company could arise from such a transaction."

If a duly authorized agent of an insurance company could not waive the payment of cash and accept property in payment of the premium, it is difficult to understand how an agent whose duty is to solicit insurance and collect the premiums, can, in the absence of authority, waive the payment of the premiums and keep the policy in force in palpable violation of the plain terms printed on the face of the policy.

As to forfeiture for nonpayment of premium, see Thompson v. Knickerbocker Life Insurance Co., 104 U. S. 252.

Counsel for the plaintiff cites and relies on Knickerbocker Life Insurance Co. v. Norton, 96 U. S. 234, as to the principle that a declaration in a policy that the insurers' agents had no power to make agreements or waive forfeitures, is only a notice to the assured, which the insurer could waive and disregard at pleasure. And whether the insurer exercised such option or not is a fact provable by parol evidence as well as by writing. The distinction between that case and the present one is that there was evidence in the former from which it could be found that the company had authorized the agent to make extensions and waive forfeitures. But in the present case there is not a particle of evidence of any such authority to be submitted to the jury. And on the contrary, we have the positive undisputed evidence of the three representatives of the defendant at Scranton, that they had no authority to waive the payment of premiums, and yet the learned court permitted the jury to find that they did have such authority, or else that the company had ratified their action or was estopped from defending on the ground that the premiums were not paid and the policy forfeited. And so far as we can see this was done without sufficient evidence.

In Lantz v. Insurance Co., 139 Pa. 546, Mr. Justice PAXSON (p. 566), quotes with approval from Marvin v. Insurance Co., 85 N. Y. 282, as follows: " As we understand the law, as laid down by the court of last resort in such cases, in order to a valid extension of the time for the payment of a premium on a life policy after the time of payment has gone by, there must be some valid consideration for the extension or waiver of the condition of payment, or there must be something said by or on behalf of the insurance company while the party bound to make the payment has still time and opportunity for so doing,

by which the insured is induced to believe the condition is waived, or that strict compliance will not be insisted upon. This introduces an element of estoppel in the case." This language is quoted and relied on by the plaintiff's counsel but we do not think it applicable to his case. It was said in respect to a case where the insurance company, by one duly authorized, had promised that strict compliance in the payment of premium would not be insisted upon. But in the present case we have already endeavored to show that no one authorized to speak for the company, in that respect, promised that nonpayment of the premiums would not work a forfeiture.

In Kompa v. Franklin Fire Insurance Co., 28 Pa. Superior Ct. 425, will be found a careful discussion and citation of authorities in regard to the waiver of a forfeiture. See also Beddall v. Citizens Insurance Co., 28 Pa. Superior Ct. 600.

In the present case, Murphy, the plaintiff, had a policy on his own life which was forfeited for the nonpayment of premiums during the time of the failure to pay the premiums on the McNamara policy. That policy was reinstated by the company, on his application, and the unpaid premiums were made a lien upon the policy, and this fact is pressed as a reason why the company should be held liable on the McNamara policy. But we see no force in this argument. It is very clear, both on principle and authority, that the company had the right to reinstate the Murphy policy, he being in good health, and at the same time refuse to reinstate the McNamara policy. Moreover, it appears, without dispute, that McNamara refused to sign an application for reinstatement and to comply with the rules of the company in that respect.

In Sydnor v. Metropolitan Life Insurance Co., 26 Pa. Superior Ct. 521, we held (p. 526) : " The acceptance of the second premium after it had become due, when the insured was in good health, did not constitute a waiver of the conditions of the policy as to the payment of future premiums, regardless of the health of the assured at the time such future premiums were permitted to become in default."

The judgment is reversed and judgment is now entered against the plaintiff.